## Case No. 696.

### In re BABCOCK.

[3 Story, 393.] [1]

Circuit Court, D. Massachusetts.　May Term, 1844.

PRINCIPAL AND SURETY — PAYMENT BY SURETY— SUBROGATION—PRINCIPAL FIRST LIABLE—BANK-RUPTCY.

1. A surety can require the creditor to proceed first against the principal only when his suretyship appears on the face of the instrument, or when he offers to indemnify the creditor in his proceedings against the principal, and to pay whatever the principal fails to pay.

2. Where the principal is bankrupt, a court of equity will, on application by the surety, compel the creditor to prove his debt against the principal, provided the surety bring the amount due into court.　And if the surety pay the debt, he will be entitled to be substituted for the creditor, and to assume his rights.

3. An accommodation acceptor of a bill of exchange is a surety, as to the drawer, but a principal as to the holder, although the holder knew him to be an accommodation acceptor.

[Cited in Mead v. National Bank, Case No. 9,366.]

[See Perry v. Crammond, Case No. 11,005.]

4. The holder of a bill of exchange is entitled to prove his debt in bankruptcy against the drawer, the acceptor, and the payee, and to receive a dividend from all their estates until his full debt is paid; and if one only be bankrupt, he may prove his debt against such bankrupt, and also proceed against the others at law.

5. Sureties are generally entitled, upon payment of the debt of the principal, to the securities held by the creditor; but in bankruptcy, if the bankrupt give the creditor a security from his own property, the creditor cannot prove his debt without surrendering the security; but if a security from a third person be transferred to the creditor, he may prove his debt without surrendering the security, and may enforce such security against such third person, provided he do not thereby receive more than his claim.

[Cited in Re Cram, Case No. 3,343; Re Ellerhorst, Id. 4,381; Re Dunkerson, Id. 4,157; Re Anderson, Id. 350; Re Kinne, 5 Fed. 60.]

6. Where a creditor proved his debt in bankruptcy against the acceptor, and, also, brought a suit at law against the drawers and attached their property,—it was *held* that he was not bound to pursue the law-suit at his own expense, but if he did not, the assignee of the bankrupt could carry it on for the benefit of the bankrupt's estate, and at the expense thereof.

[7. Cited in Re Wallace, Case No. 17,094, as an instance of proceedings or petition for the exercise of the equity power under the act of 1841.]

[In bankruptcy. In the matter of Samuel H. Babcock, a bankrupt. Petition by Henry Winsor, assignee, that Hugh R. Kendall, a creditor, for whom the bankrupt was surety on a bill of exchange, be ordered to proceed in a suit against the debtor under said bill, and apply the proceeds to the satisfaction thereof. Ordered that the creditor proceed with the suit, or authorize the same to be carried on by the assignee.]

This was a case in bankruptcy adjourned

[1] [Reported by William W. Story, Esq.]
2 FED. CAS.—19

into the circuit court from the district court, the judge of the district court being interested in the case. The petition on which the case came before the court was as follows: —"Henry Winsor of Boston, in said district, assignee of said Babcock, respectfully represents, that Hugh R. Kendall of said Boston has filed a proof of debt against the estate of said Babcock, in and by which the said Kendall states, that the said Babcock, at and before the date of the proceedings in bankruptcy in his case, was, and still is justly and truly indebted unto said Kendall in the sum of five thousand five hundred seventy-four dollars and fourteen cents, with interest thereon. First upon a certain bill of exchange, dated at Dudley on the thirteenth day of October, 1841, drawn by one Theodore Leonard, agent, upon the said Samuel H. Babcock, and by him accepted, for the sum of five thousand four hundred ninety-nine dollars and seventy-seven cents, payable in eight months from date, to the order of the said Theodore Leonard, agent, and endorsed and delivered to said Kendall for lawful value, which said bill the said Kendall avers, on due presentment thereof at maturity, was dishonored by the said Babcock, whereof the said drawer had due notice. Second, in the sum of seventy-four dollars thirty-seven cents, costs of suit, accrued in an action, brought upon said bill of exchange by said Kendall in the court of common pleas, for the county of Suffolk, in which action property of the said bankrupt was attached. And the said Kendall claims said costs in full. And your petitioner further shows that the said Theodore Leonard was agent of the Dudley Manufacturing Company, a corporation established by law in the commonwealth of Massachusetts, and that, as such agent, and for and in behalf of said corporation, drew said draft: that said corporation was, at the time of the drawing of said draft, and still is, indebted unto the said Samuel H. Babcock: that said Babcock accepted said draft for the accommodation and benefit of said corporation, and that, as between said Babcock and said corporation, the said corporation were bound to take up and pay said draft and save the said Babcock harmless therefrom, and that said Babcock was merely surety for said corporation for the payment thereof; and your petitioner further shows, that said Kendall commenced a suit against the said Dudley Manufacturing Company on said bill of exchange, and caused the property of said corporation to be attached therein, in which the writ was made returnable to the court of common pleas, at the July Term, A. D. 1842, holden at Boston within and for the county of Suffolk. That the said suit is still pending, and the said Kendall prays that he may have judgment in said suit, and take out execution on such judgment, and cause the property of said corporation to be levied upon or sold in satisfaction of said judgment; that your petitioner, on

the twenty-fifth day of August last, sent a written notice to the said Kendall, that he would be required to obtain all that can be realized from the said Dudley Manufacturing Company or from said security. And your petitioner further avers, that said Kendall well knew at the time he received the said bill of exchange, that the same was accepted by said Babcock for the accommodation of the said Dudley Manufacturing Company. And your petitioner further represents, that he is advised that by the rules and course of proceedings in a court of equity, or court sitting in bankruptcy, a party claiming to be a creditor of a surety, who holds security from the principal debtor, is bound to apply such security as far as the same will go to the satisfaction of said debt, and that if the creditor relinquishes such security he releases the surety to the extent of the security so relinquished. Wherefore your petitioner prays that the said Kendall be ordered by this honorable court to proceed in said suit and to levy upon said property of said corporation so attached, or to otherwise dispose of the same according to law, and apply the same or the proceeds thereof in satisfaction of said bill of exchange and costs, and that he be not allowed any dividend on the estate of said Babcock until he has first applied said security as aforesaid in extinguishment and satisfaction of said claims."

The answer was as follows:—"The respondent in answer to the said petition says, that he admits that he has filed a proof of debt against the estate of said Babcock as alleged in the said complainant's bill of complaint. The respondent admits said draft was drawn as set forth in the petition, but doth not admit that the same was accepted by said Babcock for the accommodation of the said company, and requires the complainant to prove that fact if material, and avers, that he the said respondent had no knowledge of said fact, if it existed. And this respondent admits, that he did commence a suit against said company upon said draft, as set forth in the said petition, and avers that on the same day he also commenced another suit against the said Babcock, as acceptor of said bill. And the said respondent admits, that on said writ against the said company, he attached all the said company's interest in certain property real and personal, which was subject to other prior attachments, and that all the personal property so attached has been absorbed by the prior attachments thereon; and that a great part of the real estate attached has also been taken on other attachments, and what is now holden by the said Kendall upon the said attachment is the remnant, which has been left of the said estate, after satisfying the said prior attachments, and of the value of said remnant, and also of the title of said company thereto this respondent is ignorant. And this respondent prays this honorable court that the said petition may be dismissed, and that he may be al-lowed his costs and counsel fees in this behalf sustained." It was further agreed that Babcock was an accommodation acceptor of the bill stated in the petition; and that that fact was unknown to Kendall, the creditor, when he took the bill.

The case was argued by William Gray, for the petitioner, Winsor, and by C. A. Welch, for Kendall, the creditor.

Before STORY, Circuit Justice, and SPRAGUE, District Judge.

STORY, Circuit Justice. The circumstances of the case, shortly stated, are these: Kendall (the creditor), is the holder of a bill of exchange, drawn by one Leonard, agent of the Dudley Manufacturing Company, payable to his own order, upon Babcock, the bankrupt, and accepted by him, and endorsed by Leonard to Kendall. It is admitted that Babcock is a mere accommodation acceptor, but that fact was not known to Kendall at the time of his taking the bill. The bill at its maturity was dishonored, and Kendall has proved his debt in bankruptcy against the estate of Babcock; and has also brought a suit against the Dudley Manufacturing Company as drawers, and attached property of the company in that suit. The assignee of Babcock by his petition now asks the court to order Kendall to proceed in said suit, and to levy his execution upon the property so attached, and to apply the proceeds in satisfaction of the bill of exchange, and that he may not be allowed any dividend on the estate of Babcock until he has first applied the property attached in extinguishment and satisfaction of his claim. The argument in support of the prayer of the petition turns upon this, that Babcock is but a surety for the debt, that the attachment is a security held by the creditor for the debt, and that, in equity, the surety has a right to require, that the security shall be first applied in discharge of his liability pro tanto, before he is called upon to discharge his secondary obligation.

There is no doubt, that a surety for a debt may in many cases be entitled to relief by requiring the creditor to proceed against the principal. But this is ordinarily limited to cases where his character as surety stands confessed upon the face of the instrument itself; and also where he offers to indemnify the creditor in his proceedings against the principal, and also offers to pay whatever the principal may fail to pay under those very proceedings. This is the common course, where the surety seeks, by a bill against the creditor and the principal, to compel the latter to exonerate the surety from losses which may otherwise be sustained by him by the delays and forbearance of the creditor in enforcing his debt. See 1 Story, Eq. Jur. § 327, and cases there cited; 2 Story, Eq. Jur. §§ 730, 849. Upon a similar ground, if the creditor in the case of the bankruptcy of the principal has not proved

his debt against him, but declines to do so, a court of equity will, upon a bill filed by the surety, compel the creditor to prove his debt in bankruptcy, and give the surety the benefit thereof; but then, in such a case, the relief is granted upon the terms, that the surety brings the amount due into court. Beardmore v. Cruttenden, 1 Cooke, Bankr. Law, 211; 1 Deac. Bankr. Laws, (Ed. 1827,) p. 291; Ex parte Rushforth, 10 Ves. 409, 414; Wright v. Simpson, 6 Ves. 734. And if the creditor has himself already proved his debt in bankruptcy, the surety will have a right upon payment of the debt to stand in equity as substituted to the rights of the creditor, and will be entitled to the dividends. But a person may be a surety so far as regards the principal, and yet not be entitled to hold that character in respect to the creditor. Thus, for example, in the case of a bill of exchange, an accommodation acceptor for the drawer is to be deemed the principal and primary debtor, as to the holder of the bill, and it will make no difference generally in cases of this sort, whether he is known to be an accommodation acceptor or not; and yet in respect to the drawer he is to be treated to all intents and purposes as a mere surety. Ex parte Ryswicke, 2 P. Wms. 89; Ex parte Marshal, 1 Atk. 129; Ex parte Matthews, 6 Ves. 283; Ex parte Atkinson, 1 Cooke, Bankr. Law, p. 210; Deac. Bankr. Law, pp. 253, 254; Id. (Ed. 1827,) p. 291; Ex parte Rushforth, 10 Ves. 409, 414. So that it is not safe in all cases to reason, that a person, who is in fact a surety, quoad the principal, is to be treated as a surety throughout in regard to the creditor. That may and usually does turn upon very different considerations. See U. S. v. Cushman, [Case No. 14,908;] Berg v. Radcliffe, 6 Johns. Ch. 302; Hollier v. Eyre, 9 Clark & F. 1, 4, 5. Now, upon the known principles of courts of equity, acting in bankruptcy, the holder of a bill of exchange is entitled to prove his debt in bankruptcy against the drawer, the payee, and the acceptor respectively, if they have all become bankrupts, and to take a dividend against the estates of each until he has been paid his full debt. If one of the parties only is bankrupt, the creditor is still entitled to proceed against the other at law, until he has obtained satisfaction. It makes no difference in the case, whether the bill is an accommodation bill or not. This is sufficiently apparent from the cases of English v. Darley, 2 Bos. & P. 62; Ex parte Bank of Scotland, 19 Ves. 310; Ex parte Rushforth, 10 Ves. 410; Ex parte Reed, 3 Deac. & C. 481; and others cited in 1 Deac. Bankr. Laws, (Ed. 1827,) 239, 255.

In relation to the point of the creditor's having collected securities in his hands for the payment of the debt, it is doubtless true, that sureties are entitled upon the discharge or payment of the debt by themselves to have the benefit of those securities. But in bankruptcy a distinction is taken between the case of a security given to the creditor by the bankrupt himself of his own property, and the case of a security of a third person transferred to the creditor by the bankrupt, or otherwise in his hands. In the former case the creditor is not allowed to prove his debt against the bankrupt, unless he surrenders up the security, or it is sold with his consent, and then he may prove for the residue of his debt, which the security when sold does not discharge. In the latter case he may prove his debt in bankruptcy without surrendering the security of the third person which he holds, and may, notwithstanding such proof, proceed to enforce his security against such third person, provided, however, he does not take, under the bankruptcy and the security, more than the full amount of his debt. This distinction was maintained in Ex parte Bloxham, 6 Ves. 449; Ex parte Crossley, 3 Brown, Ch. 237; and Ex parte Parr, 18 Ves. 65.

From the principles, which have been stated, admitting the attachment to be a security, and the bankrupt to be a mere accommodation acceptor, it is clear, that the creditor has a right to proceed against the bankrupt for his debt in bankruptcy, and also against the other parties to the bill, under his attachment, until he has recovered the full amount of his debt; for it is not a security given by the bankrupt of his own property, but is a security attained by the creditor against other parties to the bill by a proceeding in invitum. I give no opinion, what is the light in which this attachment is to be viewed in respect to the present parties—whether as a security, or as a mere remedial process to enforce payment of the debt against the drawers. In either view, so far as the present petition is concerned, the result must be the same. The most, that the assignee is entitled to, is to have the aid of the court in having the attachment suit carried on to its proper conclusion, for the benefit of the bankrupt's estate as far as regards any surplus, which shall remain after the creditor has received from the dividends in bankruptcy and under the attachment the full amount of his debt. The creditor is not bound to pursue the attachment suit at his own expense, unless he choose so to do; but he is bound, if he does not choose to carry it on upon his own account, to allow the assignee to carry it on for the benefit of the bankrupt's estate at the expense thereof. If the attachment suit is proceeded in, and any money is received under it, the creditor will be entitled to receive so much thereof as, with the dividends received, will cover the full amount of his debt and costs; the surplus will belong to the estate of the bankrupt. If the creditor declines to proceed farther, all the future costs must be borne by the assignee. If the creditor chooses to proceed in the suit, the future costs in the suit must be borne by the creditor and the

assignee, according to their respective interests in, or benefits derived from the suit.

What I shall order, therefore, upon the present petition, is, that the creditor shall forthwith make his election whether he will proceed in the attachment suit upon his own account or not;—That if he elects to proceed therein, then he shall be required to proceed therein under the order and discretion of the court, as it shall award from time to time; and that, if he shall obtain payment therein, and levy upon any property, he shall be entitled to receive from the proceeds, if sufficient, the full amount of his debt and costs —deducting therefrom the dividends received from the bankrupt's estate, and the surplus to be paid over to the assignee. If the creditor shall decline to proceed in said suit, then he shall authorize and allow the same to be carried on by the assignee at the expense and for the benefit of the bankrupt's estate; and that out of the property or money which shall be obtained under and in virtue of the suit, he shall, after the expenses thereof are deducted, be entitled to receive the full amount of his debt, beyond the dividends received by him, out of the proceeds, if sufficient, and the surplus, if any, shall belong to the assignee for the benefit of the bankrupt's estate. And either party shall be at liberty to apply to the court from time to time for further directions in the premises.

[NOTE. For other cases involving the estate of this bankrupt, see In re Babcock, Case No. 697; Ex parte Winsor, Id. 17,884; and Winsor v. Kendall, Id. 17,886.]