MERCANTILE NATIONAL BANK OF THE CITY OF NEW YORK v.
ANGUS R. MACFARLANE.[1]

February 14, 1898.

Nos. 10,884—(273).

**Insolvent Bank—Secured Creditor—Proof of Claim—Collateral Security.**

On appeal from an order allowing a claim against an insolvent banking institution, for which a receiver has been appointed, under the provisions of Laws 1895, c. 145, it is held that it is not a case for the application of any rule affecting the proof or allowance of the claim of a creditor having collateral securities.

**Same—Promissory Note—Indorser and Holder.**

The relations of an indorser upon commercial paper and the holder thereof are analogous to those of principal and surety.

**Same—Insolvent Indorser—Amount of Claim against Estate.**

When the holder of a bill or note applies to prove his claim against the estate of an insolvent surety, or one occupying the position of a surety, any sum actually received in payment from the principal debtor must be deducted from the amount to be proved. The sum actually remaining unpaid must be the basis on which the dividend is to be computed.

**Same—When Claim Can Be Filed—Surrender of Note—Right to Enforce against Maker.**

The holder of a bill or note indorsed by one who becomes insolvent is not compelled to enforce its collection as against parties primarily liable, before he can make a claim upon the insolvent estate. Nor is he required to surrender up the obligation as a condition to participating in dividends. In the absence of a statute, he may proceed against the insolvent estate, and also against the other parties to the obligation, until his debt is fully collected.

**Same—Dividend—Subrogation.**

Whenever a dividend is paid upon such an obligation by a receiver, a cause of action against all prior parties thereto immediately arises in his favor. When the full amount is paid out of the assets of such an estate, it is subrogated to all of the holders' rights as against these parties.

Cross appeals by the Mercantile National Bank of the City of

[1] Reported in 74 N. W. 287.

New York, as claimant, and Angus R. Macfarlane, as receiver of the Security Bank of Duluth, from a judgment entered in the district court for St. Louis county, pursuant to the findings and order of Moer, J., conditionally allowing claimant's claim against the insolvent bank. Affirmed.

*William C. White*, for plaintiff.

*Billson, Congdon & Dickinson*, for defendant.

COLLINS, J.[2]

Macfarlane became the duly appointed and legally qualified receiver of the Security Bank of Duluth, an insolvent, August 16, 1896, under the provisions of Laws 1895, c. 145. On that day, the claimant, a banking institution in New York City, held commercial paper and notes previously discounted and indorsed by the insolvent, and not yet due, to the amount of $62,600. The insolvent also had on deposit with claimant, in New York, a sum exceeding $19,000.

Immediately after the insolvency, other creditors of the insolvent instituted proceedings, and attached this deposit; whereupon the claimant commenced action, attached the money on deposit and also the notes before referred to, which it had already discounted. Subsequently, by stipulation and an order of the court, the receiver and claimant bank settled up and caused to be released these attachments, and, out of this settlement, the bank received nearly $13,000. It had also received, on account of and as payments upon the indorsed paper, after the receiver was appointed, and prior to the day this cause was submitted to the court for its decision, nearly $18,000, so that there remained due to it, upon the indorsements on the day last mentioned, July 13, 1897, the sum of $32,269.79.

In February, 1897, the bank filed its claim with the receiver, alleging the amount due and unpaid on account of the indorsements made by the insolvent to be $33,731.68, besides interest and protest fees. On this claim the receiver allowed the sum of $27,756.60, and no more. The claimant then appealed to the district court, alleging in its complaint that the actual amount due on

[2] BUCK, J., did not sit.

its claims was erroneously and incorrectly stated when presented to the receiver, and that it should have been $62,600, besides certain protest fees. A trial resulted in findings of fact to the effect, in addition to the facts above stated, that the balance due claimant bank on account of the indorsed paper on said July 13, 1897, amounted to $32,269.79; that the bank still retained possession of all of said indorsed notes, except such thereof as had been fully paid by the makers; and that it assumed to hold and enforce the remainder as against makers and indorsers prior to the insolvent's indorsement.

The court found, as matters of law, that the claimant bank was entitled to have allowed, as a claim against the insolvent estate, the sum last mentioned, subject, however, to the condition that, before being allowed to participate in any dividend or dividends which had been theretofore or should be thereafter declared, the claimant should be required to account to the receiver for all moneys paid as principal upon the notes held by it subsequent to the date last mentioned, the amount thereof to be deducted from the sum allowed as a claim, the unpaid balance to be the sum or basis upon which dividends were to be computed and paid to said claimant, such accounting and deduction to be made as often as any dividend is declared in which the claimant seeks to participate, and that claimant be entitled to retain and collect all of such paper, subject to its obligation to account for collections, when seeking to participate in dividends. Judgment was entered on these conclusions, and cross appeals taken.

On claimant's appeal it is contended that the trial court erred in not allowing as a claim against the estate, and as a basis for the computation and allowance of dividends, the full sum of the obligation as it originally existed,—$62,600,—and also erred when holding that claimant must account to the receiver for any and all payments on the principal sums due, made subsequent to July 13, 1897, the unpaid balance to be the sum upon which dividends are to be computed and paid, in case claimant seeks to participate in dividends.

On the receiver's appeal it is claimed by his counsel that the court was in error when it determined that the claimant could re-

tain all of the notes remaining unpaid on the day referred to and enforce collection thereof as against the makers and prior indorsers, subject only to the obligation to account for the sums paid thereon prior to the time of any distribution of the trust funds by the receiver. It is further contended that the claim should have been wholly rejected, because the claimant bank had elected, before filing the same with the receiver, to proceed by attachment in the state of New York, and to there pursue to a successful termination a remedy directly opposed and hostile to the law here being enforced, and the benefits of which the claimant now invokes.

In Ueland v. Haugan, 70 Minn. 349, 73 N. W. 169, we held that the provisions of G. S. 1894, c. 76, are applicable where receivers have been appointed for insolvent banking corporations, in accordance with Laws 1895, c. 145, § 20. The effect of that decision, in addition to supplementing the provisions of chapter 145 by those of the older statute, was to ingraft upon all proceedings thereunder the rules of practice and the code of procedure which had been built up by the courts for the government of cases arising under said chapter 76. But in neither of these statutes is there any rule prescribed for the allowance of claims, or for the distribution of the trust funds among creditors. The only reference made to the subject is the very general provision in section 20 of the 1895 laws, for the payment of debts, "upon the order of the court." That the mode of procedure and the rule of distribution must be certain and uniform in all cases is self-evident.

Counsel for the receiver argue that we should adopt and apply in these proceedings the statutory requirements affecting creditors holding securities, found in the insolvency laws, because the same express the general and settled policy of the state in respect to the subject of the distribution of the assets of an insolvent; and they also argue that the statutory requirements are nothing more than the equity rule applicable in the absence of statutory regulations. We cannot now agree with counsel on the first proposition; that is, we are not now willing to admit that any of the various provisions of the insolvency laws can be read into the 1895 law; and it is manifest that the equity rule which they insist upon has no application to the facts before us, as will be shown hereinafter.

Counsel for the creditor contends that the rule which should be applied in cases of this kind is that which prevails in many of the states, to the effect that a creditor, having collateral sufficient to satisfy a part only of his debt, is entitled to prove the whole of his claim against assets in the hands of a receiver, and cannot be required to allow credit for any collections or payments made after the date of the declared insolvency from collateral securities. Money received on the collaterals after declared insolvency is to be considered as still held as collateral to the debt, and is not to be deemed a payment thereon,—citing Gluck & Becker, Rec. § 90; Chemical v. Armstrong, 8 C. C. A. 155, 59 Fed. 372, and other authorities.

A most excellent reason for declining to apply this rule, even if it is the law in a proper case, is that the facts here do not present any question of collateral security at all. The liability of the insolvent was that of indorser upon a number of negotiable promissory notes, which it discounted to a third party, and upon which its liability to the latter became fixed and certain by due protest of the paper as it matured, subsequently to the declared insolvency. There was no indebtedness independent of the notes, and they were not held as collateral. The relations between the insolvent indorser and the claimant indorsee were simply analogous to those of a principal and surety, the suretyship of the insolvent arising out of the indorsement of the notes; and the case is to be determined with reference to this fact.

The settled rule, in the absence of a statute, is that, where the holder of a note or bill applies to prove his debt against the estate of an insolvent surety, any sum actually received in payment from another party to the obligation must be deducted from the amount to be proved. The sum actually remaining unpaid must be the basis upon which the dividend is to be computed. In re Babcock, 3 Story, 393, Fed. Cas. No. 696; Sohier v. Loring, 6 Cush. 537.

It is evident that no other rule could be adopted in the administration of the estate of an insolvent surety without wholly ignoring his rights as such surety, as the same have been definitely settled by the courts. Nor is there any rule of law or equity which requires that the holder of a note or bill indorsed by an insolvent

must enforce its collection, as against parties primarily liable, before he can make a claim upon the insolvent estate. Nor is he required to surrender up the obligation as a condition to participating in dividends. In the absence of a statute, he may proceed against the insolvent estate, and also against the other parties to the obligation, until his debt is fully collected. See In re Babcock, supra. Immediately upon the payment of a dividend to the creditor, the receiver can proceed against the original obligors upon the paper, and as to them enforce collection of the amount paid; and, upon full payment of the obligation, the estate is subrogated to all of the creditors' rights as against prior parties.

From the principles laid down in reference to the administration of the estate of insolvent sureties, it is clear that the conclusions of law of the court below were correct, and that the order appealed from must be affirmed.

A few words in reference to the contention of counsel for the receiver that the claim against the estate should have been wholly rejected, for reasons hereinbefore stated: When the debtor was declared insolvent, the creditor had in its possession, on what is known as a "general deposit account," a large sum of money. The title of the receiver to this money, by virtue of his appointment under the statute, would have been recognized and enforced in the state of New York if no injustice to the citizens of that state would have resulted, and if the rights of creditors were not thereby prejudiced, provided such title was not in conflict with the laws or public policy of that state. Subject to these conditions, the receiver could have appeared in the courts of that state, and have maintained an action for the recovery of the money. In re Waite, 99 N. Y. 433. The same rule prevails here. Comstock v. Frederickson, 51 Minn. 350.

It must stand admitted that the creditor had the legal right to proceed by attachment as against the deposit account. But should we hold that, by availing itself of this legal right, the creditor claimant had barred itself from making any claim in the insolvency proceeding under a law which it had disregarded when preventing, by reason of its seizure of the money, an equal distribution of the assets of the insolvent, we should be met by the fact

that no attachment proceedings were necessary in order. to protect the creditor as to the money in its hands when insolvency was declared. It had the right to retain the money on general deposit, and to offset as against the same the amount due from the depositor debtor on account of the indorsements. Had it. done this, instead of unnecessarily proceeding by attachment, its right thereafter, and as to the balance due on the indorsed obligations, to participate in dividends, could not well be doubted. As it had the right to offset its notes to the extent of the deposit, its proceeding by attachment cannot be said to have materially affected the question of its right to prove the balance of its claim, and to share in the distribution.

From the statement of facts it appears that, in accordance with the provisions of the insolvency laws, this claim was originally presented and passed upon by the receiver. This was irregular. The claim should have been exhibited to the court in accordance with chapter 76, supra, § 5911. But this irregularity is of no consequence, and can have no bearing upon the present appeals.

Judgment affirmed.