WINTHROP NATIONAL BANK OF BOSTON v. MINNEAPOLIS
TERMINAL ELEVATOR COMPANY and Others.

July 26, 1899.

Nos. 11,708—(207).

**Corporation—Liability of Stockholders—Bonds Guarantied by Individual Stockholders.**

To secure the payment of its bonded indebtedness, defendant corporation executed and delivered a trust deed upon its property. Two of its principal stockholders guarantied in writing the payment of the bonds, and also included in the deed, and as further security, certain individual property. In an action under G. S. 1894, c. 76, to enforce the stockholders' liability under the constitutional provision, other stockholders contended that because of these acts of the two principal stockholders, and an oral agreement which the latter had entered into with them, when consent was secured to the issuance of the bonds and the execution of the deed, that these two should protect and bear harmless all other stockholders from this liability, a fund was created for the express benefit of both bondholders and stockholders, which must be exhausted before the constitutional liability can be enforced. *Held*, that on the issues made by the pleadings the trial court did not err when it refused to find whether such an agreement was made, and *held*, further, that the evidence produced upon the trial was insufficient to support a finding that a valid agreement of that import was entered into.

**Same—Corporate Asset.**

The two principal stockholders became personal sureties for the payment of the bonds, and also pledged individual property for their payment, as before stated. This liability did not become an asset of the corporation, to be exhausted before recourse could be had upon the other stockholders under the provisions of chapter 76.

**Judgment—Order to Show Cause.**

One of the bondholders moved the court, after judgment had been entered herein, for an order citing in the trustee named in the deed to show cause why it should not be foreclosed as to the individual property. *Held*, for reasons stated in the opinion, that the motion was properly denied.

Action in the district court for Hennepin county to enforce the constitutional liability of stockholders in defendant corporation.

The case was tried before Johnson, J., who found in favor of plaintiff and intervening creditors. From a judgment entered pursuant to the findings, and also from an order, Simpson, J., denying a motion for a new trial, and also from an order denying a motion to amend the findings and conclusions, and also from an order denying a motion requiring the trustee to foreclose the mortgage or trust deed referred to in the opinion, certain defendants and Charlotte M. Truesdale, intervenor, appealed. Affirmed.

*Albert E. Clarke, F. W. M. Cutcheon,* and *W. F. Booth,* for appellants.

*Keith, Evans, Thompson & Fairchild, Flannery & Cook, Jackson & Lancaster, Woods, Kingman & Wallace,* and *Hahn, Belden & Hawley,* for respondents.

COLLINS, J.

This was an action brought under G. S. 1894, c. 76, to enforce the constitutional liability of stockholders in the Minneapolis Terminal Elevator Company. It was claimed by appellants, who are stockholders, that, before resort could be had upon them, a certain fund, which they claim must be regarded as an equitable asset of the company, must be first exhausted. For a better understanding of the case, certain facts, part of which are undisputed, should be stated.

R. B. Langdon, W. H. Hinkle, and T. M. Linton were, in 1891, the principal stockholders in the Minneapolis Elevator Company. It had proven unprofitable, and in October of that year these three men became owners of its property, consisting mainly of an elevator plant. They had previously caused the incorporation, under the statute, of defendant Minneapolis Terminal Elevator Company. In October these men sold the property in question to the new corporation. Its stock shares had been issued, of the par value of $218,000, Langdon owning more than half. The first year's business seems to have been satisfactory, but during the summer of 1893 heavy losses occurred, and on September 9 a stockholders' meeting was held, at which it was announced that the total indebtedness of the corporation amounted to $560,000. The stockholders were asked by the managing officers to authorize the issuance of the bonds of

the corporation to cover the debt. Some of the stockholders objected to this because they believed the losses, said to amount to $300,000, had been incurred in illegitimate and ultra vires transactions in wheat, and because they did not believe the balance of $260,000 to be a corporation debt. The bonds were subsequently issued.

It is claimed by appellants that, as a condition to granting authority therefor, and to secure payment of the same by a trust deed or mortgage upon the property of the corporation, Langdon and Hinkle agreed with the objecting stockholders that they would personally guaranty the payment of each bond, that they would mortgage certain property of their own to secure payment, that they would purchase 63 shares of stock held by three persons named, and that they would hold the other stockholders harmless from future liability on their stock shares. It is undisputed that Langdon and Hinkle personally guarantied, in writing, the payment of each bond, that their own property was mortgaged to secure such payment in connection with that belonging to the corporation, and that they purchased the 63 shares of stock referred to; that default was made in payment of the principal and interest due on a part of the bonds; and that this plaintiff, as owner thereof, brought an action against the corporation to recover on the same, obtained judgment, and that an execution was issued upon said judgment, and was duly returned unsatisfied.

The complaint included all of the allegations necessary to support this form of action. Several creditors of the corporation intervened with the usual pleading. One of these intervenors, with a claim of more than $18,000, was an entire stranger to the bonds and mortgage, and had no interest in the foreclosure of the latter, or any of the proceeds which might be realized therefrom. The appellants answered as stockholders, admitting, denying, or alleging want of knowledge as to some of the allegations of the complaint. They also set up the guaranty of Langdon and Hinkle on the back of the bonds, and averred that the security thus afforded was and is ample to discharge the indebtedness. They also alleged the mortgaging of the property belonging to Langdon and Hinkle to secure the bonds, that no part of such property has been sold, and, fur-

ther, that it is of sufficient value to pay the bonds in full, without recourse upon the stockholders. It is also alleged in these answers that the bonds were delivered to plaintiff in payment of an indebtedness of Langdon and Hinkle for which the defendant corporation was not primarily liable, and also that the liability of the latter on the bonds was simply secondary to that of Langdon and Hinkle. To one of the complaints filed by intervenors, appellants answered, among other things, that the bonds and trust deed were issued and executed without any authority whatsoever, and that they were wholly void. No cross bill was filed whereby issues could be raised between the stockholders, on the one side, and Hinkle, the representatives of Langdon's estate (he having deceased before this action was instituted), and the trustee mentioned in the trust deed, on the other, or as between the latter. The answers admitted that on the face of the bonds the defendant corporation was primarily liable, and that Langdon and Hinkle were guarantors, and there was no allegation that plaintiff or the other bondholders ever knew that these were not the true relations between the parties.

Now, as between these bondholders, including plaintiff and appellant stockholders, the issues presented by the pleadings seem to have been simple, and to have been reduced to the claim that the bonds were issued and the trust deed executed without authority. The guaranty and the pledging of the individual property of Langdon and Hinkle for the payment of the bonds stood unquestioned. Both of these acts were apparent from a bare inspection of the bonds and the trust deed, so that the only question arising therefrom is as to the legal effect of such acts in an action brought to enforce a stockholder's liability. On the issue we have mentioned respecting the authority to issue the bonds and to execute the trust deed or mortgage the evidence was conclusive in favor of the regularity of the transaction. Nor was there a particle of evidence, even if it had been admissible, tending to show that the indebtedness represented by the bonds was that of Langdon and Hinkle, or that they were primarily liable thereon. All of the material find-ings on which rest the order for judgment against appellants, and the judgment itself, are abundantly supported by the admissions

in the answers, or by the evidence adduced upon the trial, much of which was introduced by appellants themselves.

As we understand counsel for appellants, their contention is that, by reason of the guaranty of payment of the bonds entered into by Langdon and Hinkle and the mortgaging of their individual property as security, and an oral agreement which, as before stated, they claim was entered into by these gentlemen and the stockholders that the latter should be protected and held harmless from the liability now attempted to be enforced, a fund was created for the express benefit of both bondholders and stockholders out of which the bonds must be paid if such fund is adequate, and by means of which the latter are to be indemnified, in whole or in part, against loss arising out of an enforcement of the constitutional liability. The argument is that, if the agreement was in fact made by Langdon and Hinkle that they would create a fund for the purpose of paying the debts of the corporation, and thus protect the stockholders, the effect of the agreement was to make the fund an asset of the corporation, which must be looked upon as any other asset and disposed of as such. It must first be exhausted before recourse can be had upon the shareholders.

But from what has been stated as to the contents of the answers filed in this action it is apparent that no such agreement was pleaded. There was not a suggestion anywhere in the pleadings that Langdon and Hinkle had, in order to secure authority to issue the bonds, agreed to do anything more than to guaranty payment of the same, and to pledge certain property of their own as further security. The oral agreement alleged to have been made, and upon which counsel so strongly rely, was not set up in any form. Nor was the claim that such an agreement had been entered into litigated by consent, for all evidence tending to prove it was duly objected to by plaintiff's counsel; and upon the overruling of the objections counsel preserved the same by excepting to the rulings. Under these circumstances it was not error for the trial court to decline to find whether or not Langdon and Hinkle made the oral agreement to protect and save the stockholders from future liability.

But we can easily go further than this, for the evidence produced

as to what transpired in reference to obtaining the consent of the stockholders to the issuance of the bonds and the execution of the trust deed covering the property of defendant corporation was insufficient to justify or support a finding that there was anything which approached a valid agreement. There was more or less talk between Langdon and Hinkle on the one side and another shareholder on the other as to what some of the shareholders insisted upon as a condition to their consent to the taking of the proposed step, but what the result of the conversation was is indefinite and uncertain, even if the oral agreement, as contended for, is enforceable under the statute of frauds. But the fact is that at the meeting at which it is claimed an agreement was made of this character, the appellants being present in person or being represented by agents and attorneys, a resolution was adopted, spread upon the minutes kept by the secretary, and thereafter its contents were incorporated into the trust deed, which carefully and precisely defined the relations between Langdon and Hinkle and the other stockholders, and which indicated almost conclusively that the former did not assume any liability except that of personal guarantors of the debt and pledgors of certain property of their own for its payment. That the defendant corporation was primarily liable for all of the secured indebtedness was recited, and it was provided that Langdon and Hinkle, as guarantors, should be subrogated to all of the rights of the bondholders as against the property and effects of the corporation should they pay the bonds, or should their pledged property be subjected to such payment. This leaves the rights of the parties to be determined by the conceded facts.

The plaintiff made a complete cause of action against the stockholders under the provisions of chapter 76, unless the creditors of the corporation are first obliged to resort to the personal guaranty of Langdon and Hinkle, and to the property pledged by these gentlemen, and to exhaust both of these remedies, before enforcing the constitutional liability of the shareholders in the manner prescribed by statute. It is impossible to conceive how the right of the bondholders to pursue the living guarantor, or the representatives of the estate of the one who is dead, upon their contract of guaranty, or the other right as against the property mort-

gaged by these guarantors, can be regarded as assets, legal or equitable, of the defendant corporation, which must be resorted to or exhausted before judgment as demanded and ordered can be entered in this action. Langdon and Hinkle became personal sureties in behalf of the corporation, and also sureties, as mortgagors of their property; and the liability which they incurred as such sureties is not an asset of their principal. It is, of course, an indemnity contract in favor of the stockholders which they may enforce in their own behalf if they take proper steps so to do. But the stockholders cannot insist as a right that the creditors of the corporation shall enforce the contract, even if all of the necessary parties to such enforcement had been brought into the proceedings. See Mercantile Nat. Bank v. Macfarlane, 71 Minn. 497, 74 N. W. 287.

Mrs. Truesdale appeals from an order denying her motion, made about two months after judgment was entered, for an order of the court citing in and making the trustee named in the trust deed a party, and to show cause why the deed should not be foreclosed. All of the property belonging to defendant corporation and covered by the deed had long before been disposed of, as hereinbefore stated, so that nothing remained but the individual property of Langdon and Hinkle. Mrs. Truesdale was found not to be a stockholder. She was simply a creditor in the sum of $1,000, holding one of the bonds. There are several reasons why the motion was properly denied. It was not made until long after judgment herein had been rendered fully determining the questions presented by the pleadings. It was an improper controversy to drag into the proceedings, for it was merely an attempt to settle, as between the bondholders, a dispute as to the advisability of exhausting the claims against the sureties before enforcing the stockholders' liability. Such a dispute is not a proper subject for settlement in a proceeding of this kind. And, while all of the bondholders were interested in the trust deed and the individual security therein described, some of them had not appeared in this proceeding. Further than this, one of the creditors who had intervened herein (Van Duzee) had no interest whatever in the controversy as to when the trust deed

should be foreclosed. The ruling of the trial court was correct upon this point.

The orders and judgment appealed from are affirmed.