## STORING v. FIRST NAT. BANK OF MINNEAPOLIS, MINN.

Circuit Court of Appeals, Eighth Circuit.
September 28, 1928.

No. 8038.

J. M. Hanley, of Mandan, N. D. (John F. Sullivan and W. J. Sullivan, both of Mandan, N. D., on the brief), for plaintiff in error.

John Junell, of Minneapolis, Minn. (G. W. Buffington and Junell, Dorsey, Oakley & Driscoll, all of Minneapolis, Minn., on the brief), for defendant in error.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and POLLOCK, District Judge.

BOOTH, Circuit Judge. This is a writ of error to a judgment rendered in favor of plaintiff in error, plaintiff below, but in a lesser amount than was demanded. A jury was duly waived by written stipulation filed, and the case was tried to the court. Jurisdiction was based upon diversity of citizenship. The main question relates to the validity of a set-off made by the defendant bank.

The facts were stipulated, among them the following: That the Merchants' National Bank of Mandan, N. D., was insolvent on December 21, 1923; that plaintiff in error was appointed receiver of the bank by the Comptroller of the Currency on December 26, 1923; that on the 21st day of December, 1923, and for a long time prior thereto, the Merchants' National Bank of Mandan, N. D., had on deposit with the defendant, at Minneapolis, Minn., on open account, and subject to the order of the Merchants' National Bank of Mandan, a large sum of money; that on the 21st day of December, 1923, the Merchants' National Bank being insolvent, and having on said day been closed by the Comptroller of the Currency of the United States, and being then and there in charge of the Comptroller and his agent, the Comptroller by his agent duly notified the defendant that the Merchants' National Bank was insolvent and was closed, and that no drafts theretofore drawn on defendant by the Merchants' National Bank of Mandan, N. D., should be honored or paid by the defendant; that on and prior to December 20, 1923, various customers of defendant indorsed to and deposited with defendant various checks, drafts, and other items, drawn on the First National Bank of Mandan, N. D., and on other banks in its vicinity, for collection and credit to their respective accounts; that the items were credited to the accounts of the respective customers on the books of defendant; that the items were inclosed by defendant in two letters addressed to the Merchants' National Bank of Mandan, with instructions to collect the same and remit the proceeds thereof to defendant; that the items were received and collected by Merchants' National Bank of Mandan on or about December 21, 1923, and before the bank closed; that the drafts and other items for which the Merchants' National Bank of Mandan received payment were delivered to the respective makers, drawers, or obligors thereof; that the aggregate amount of the items and the proceeds thereof collected by the Merchants' National Bank of Mandan aggregated the sum of $7,411.59; that on December 31, 1923, defendant was obliged to pay, and did pay, for and on behalf of the Merchants' National Bank of Mandan, the sum of 20 cents for exchange on various items sent to defendant by the Merchants' National Bank for collection; that on December 21, 1923, the Merchants' National Bank of Mandan, before it was closed, mailed to defendant bank a letter containing various checks, drafts, and other items, totaling $9,057.72, with instructions to collect the same and credit the proceeds thereof to the account of the Merchants' National Bank of Mandan, and that the checks, drafts, and other items were so collected by the defendant bank; that the gross amount of credits to the account of the Merchants' National Bank of Mandan on said open account, which are material to the case here presented, is $19,512.06; that prior to the commencement of suit plaintiff demanded of defendant said sum of $19,512.06, and that no part of the same has been paid by the defendant; that on December 21, 1923, and before the Merchants' National Bank of Mandan was closed, it drew a draft on defendant, payable to defendant, in the amount of $7,411.59, and mailed the draft to defendant; that defendant received the draft on December 24, 1923; that prior to the receipt of the draft defendant had received no advice or information that the checks and drafts sent by it to the Merchants' National Bank of Mandan had been collected prior to the closing of that bank; that thereupon, and on said December 24, 1923, defendant charged the account

of the Merchants' National Bank of Mandan with the amount of the draft, viz. $7,411.59; that defendant has been at all times, and is now, ready and willing to pay to plaintiff the sum of $12,100.27; and that defendant offered to pay plaintiff $12,100.27 at the time plaintiff demanded the sum of $19,512.06.

The trial court held that the foregoing accounts of the two banks with each other constituted mutual accounts, and that the defendant bank was entitled to offset the amount owed to it by the Mandan Bank against the amount owed by it to the Mandan Bank, and that the true amount owing by the defendant bank to the plaintiff, in view of such set-off, was $12,100.47, for which amount, with interest, judgment was entered for plaintiff. The vital question in the case is whether the facts support the conclusion that a right of set-off existed in the defendant bank at the time of the insolvency of the Mandan Bank.

Plaintiff, in supporting the negative of this question, asserts the following propositions: First, that the rights of the parties became fixed as of the time of the insolvency; second, that the defendant bank had the right to set off against the debt owed by it to the Mandan Bank the debt owed by the Mandan Bank to it only if the latter debt was payable at the time of the suspension; third, that the latter debt was not payable at the time of the suspension, by reason of the prior sending of the draft by the Mandan Bank, and that this sending of the draft "retarded the time when the indebtedness * * * became payable" until the draft was received by defendant bank, which was after the suspension of the Mandan Bank. We will briefly examine these several propositions in their order.

■ If, by the first, plaintiff means that the debts of the two banks, each to the other, must have existed and been owned by the banks respectively at the time of the insolvency, it doubtless is correct. Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059.

■ As to the second: The right of set-off is recognized in Minnesota, the place where this action was brought, both by its statutes and by the decisions of its courts. See Gen. Stat. Minn. 1923, §§ 9166, 9253, 9254; Sweetser v. People's Bank, 69 Minn. 196, 71 N. W. 934; Mercantile Nat. Bank v. Macfarlane, 71 Minn. 497, 503, 74 N. W. 287, 70 Am. St. Rep. 352; Meighan v. Cohen, 161 Minn. 302, 201 N. W. 431; Chippewa, etc., Bank v. Moyer, 170 Minn. 502, 212 N. W. 895. In view of the provisions of the Judicial Code permitting equitable defenses in actions at law (U. S. C. tit. 28, § 398 [28 USCA § 398]), it is not of importance whether the right of set-off thus recognized is legal or equitable. The procedural questions which arose in Scott v. Armstrong, supra, are therefore not here involved.

■ It is suggested by plaintiff that set-off was not pleaded by defendant, but we think the answer of defendant is sufficient in this respect. Assuming, for the sake of the argument, that the debt from the Mandan Bank was not payable at the time when the defendant bank made use of it as on offset, yet the offset was valid under the Minnesota decisions. See Mercantile Nat. Bank v. Macfarlane, supra; Sweetser v. People's Bank, supra; Stolze v. Bank of Minn., 67 Minn. 172, 69 N. W. 813; Wunderlich v. Merchants' Nat. Bank, 109 Minn. 468, 124 N. W. 223, 27 L. R. A. (N. S.) 811, 134 Am. St. Rep. 788, 18 Ann. Cas. 212; Platts v. Metropolitan Nat. Bank, 130 Minn. 219, 153 N. W. 514. The same rule obtained in the federal courts and in the courts of many of the states. Schuler v. Israel, 120 U. S. 506, 7 S. Ct. 648, 30 L. Ed. 707; German-American State Bank v. Larimer, 235 F. 501 (C. C. A. 8); Fourth Nat. Bank v. Smith, 240 F. 19 (C. C. A. 8); American Bank v. Johnson (C. C. A.) 245 F. 312; Jandrew v. Guaranty State Bank (C. C. A.) 294 F. 530; Germania Sav. Bank & Trust Co. v. Loeb (C. C. A.) 188 F. 285; Geo. D. Harter Bank v. Inglis (C. C. A.) 6 F. (2d) 841. And see note, 43 A. L. R. 1328.

■ By reason of the foregoing, the remaining proposition, that the time when the debt owed by the Mandan Bank to defendant bank became payable was retarded by the sending of the draft by the Mandan Bank, would seem to become immaterial. However, we think it is not sustained, either on principle or by the cases cited in its support. The Mandan Bank, upon receiving from defendant bank the collection items, became the agent of the defendant bank. The moment the collection was made, the Mandan Bank became the debtor of the defendant bank, and the debt was payable at once. The making and forwarding of the draft by the Mandan Bank did not alter the relation existing between the two banks, nor did it affect the maturity of the debt. It may be that the sending of the draft, if with the consent of the defendant bank, suspended temporarily the right of the defendant bank to sue on the debt; but the suspension of the right to sue was not the equivalent of postponing the date when the debt was payable. The right to sue on a debt and the right to use the debt as an offset are not always equivalent. Taylor v.

Mayor, 82 N. Y. 10; Cornell v. Donovan, 14 Daly (N. Y.) 295; Clark v. Story, 29 Barb. (N. Y.) 295; Brown v. Tibbits, 11 C. B. (N. S.) 855. The draft did not create the debt owed by the Mandan Bank to defendant bank. The draft was merely evidence of the debt. The debt existed before the draft was drawn, and would have continued to exist even if the draft had been destroyed. We think that the sending of the draft had no effect on the maturity of the debt.

Our conclusion is that the judgment is supported by the facts, and it is accordingly affirmed.