RICKEY v. NEW YORK STATE NAT. BANK, ALBANY, N. Y.

No. 1623.

District Court, N. D. New York.

June 15, 1933.

William T. Moore, of Mechanicville, N. Y., for plaintiff.

Whalen, McNamee, Creble & Nichols, of Albany, N. Y., for defendant.

COOPER, District Judge.

This is a suit by the receiver to recover from the defendant bank $3,794.72, with interest thereon from the 31st day of April, 1931. Jury trial was duly waived. The facts are stipulated.

This sum is the amount of a draft drawn by one Ella H. Barker on her special interest account in the First National Bank of Mechanicville, N. Y., evidenced by passbook No. 1686.

Prior to the transaction hereinafter referred to, relating to draft drawn upon plaintiff bank by said Ella H. Barker, there was on deposit in said defendant bank to the credit of plaintiff bank the sum of $45,444.40.

On June 20, 1931, and for a long time prior thereto, it was the custom and practice between plaintiff bank and defendant bank, with reference to said account, for defendant to send to plaintiff bank, for collection, checks, notes, and other forms of commercial paper drawn upon or payable at other banking institutions, and for defendant to send to plaintiff bank, for payment, checks, notes, and other forms of commercial paper drawn upon or payable at plaintiff bank, the proceeds of which were charged by defendant to said account of plaintiff bank, which was the method by which said proceeds were paid to defendant and, by agreement between plaintiff bank and defendant, such checks, notes and other forms of commercial paper sent by defendant to plaintiff bank, as aforesaid, might be charged to said account the day received by plaintiff bank in the regular course of transit by mail, which was the first business day following the forwarding thereof by defendant to plaintiff bank by mail, subject, however, to a correction entry or cancellation of such charge to the plaintiff bank in the event that any such check, note, or other form of commercial paper should not be paid to the plaintiff bank.

It was the custom and practice between plaintiff bank and defendant, with reference to said account between said banks, for defendant, on the last day of each month, to send the plaintiff bank by mail a written statement of the said account showing the transactions therein during the said month, and for plaintiff bank to examine said statement upon receipt thereof and deliver to defendant a reconcilement in writing of any differences in amount which might exist on the books of plaintiff bank from the amounts as shown on said statement.

On June 19, 1931, the said Barker drew a draft on the plaintiff bank for said sum, the

same being the full amount of such account. Such draft, together with the passbook, was delivered by Barker to the Albany Savings Bank on that date. On the same day the Albany Savings Bank forwarded said draft and passbook to the defendant for collection. The defendant on the same day forwarded by mail the passbook and draft to the plaintiff bank for payment, together with a collection letter. They were received by the plaintiff bank on the morning of June 20, 1931.

When the said draft and passbook were received by plaintiff bank on Monday June 20, 1931, the amount of said draft was charged to the account of said Barker and credited to the account of defendant on the books of the plaintiff bank, and said collection letter, said draft, and said passbook were stamped "Paid" by plaintiff bank, all of which occurred prior to the closing of plaintiff bank, and said collection letter was deposited in the mail in an envelope addressed to defendant, which was the usual method of advice of payment between said banks, which said envelope was deposited in the mail at Mechanicville, N. Y., after 12 o'clock noon of said day, which was Saturday, and was received by the defendant on Monday, June 22, 1931, at which time the amount stated in said collection letter, to wit, $3,794.72, would ordinarily, in accordance with the custom and practice between plaintiff bank and defendant with reference to said accounts between said banks, have been charged by the defendant to the account of the plaintiff bank. Said amount was not then so charged to plaintiff bank on the books of the defendant.

The hours of the plaintiff bank on June 20, 1931, which was Saturday, were from 9:00 a. m. to 12:00 m. and from 7:00 p. m. to 9:00 p. m. Plaintiff bank was open from 9:00 a. m. to 12:00 m. on June 20, 1931, and at 5:00 p. m. on the same day the bank was closed by order of the board of directors on the ground that it was insolvent.

Immediately after the action of the board of directors of said bank, one A. N. Douglas, who was a national bank examiner under the Comptroller of the Currency of the United States, took charge of the affairs of said bank.

After the close of the said bank on June 20, 1931, and on the same day, the said Douglas informed the defendant bank that the plaintiff bank had been closed by order of the board of directors.

On June 30th, 1931, defendant forwarded to plaintiff bank a written statement of said account as of said date, upon which statement the amount of said Barker draft had not been charged by defendant to said account of plaintiff bank, and on July 1, 1931, said A. N. Douglas forwarded to defendant a reconcilement in writing of the books of the plaintiff bank and of said statement of June 30, 1931, upon which reconcilement statement the sum of $3,794.72, which was the amount of the draft drawn upon the plaintiff bank by said Barker, was credited to the defendant, said amount not having been charged to said account of plaintiff bank on defendant's statement.

Said reconcilement statement was received by defendant on July 3, 1931, and defendant thereupon paid to said Albany Savings Bank of Albany, N. Y., the said sum of $3,794.72, which was the amount of the draft drawn upon the plaintiff bank by the said Barker.

Said draft drawn by the said Barker as aforesaid and said passbook No. 1886 have never been returned to defendant by plaintiff or plaintiff bank. No claim against the plaintiff as receiver has been filed for the amount of said draft by the said Barker or any one claiming under her or by the defendant. Dividends of 59 per cent. have been declared and paid on all claims against plaintiff bank, and no dividend has been declared or paid for the amount of said draft, to wit, $3,794.72.

On July 30, 1931, plaintiff drew a check on defendant for $45,444.40, which check was returned by defendant unpaid on the ground of insufficient funds, and on August 1, 1931, the defendant paid to plaintiff the sum of $41,649.68, the difference being the amount of the Barker draft.

Receiver for plaintiff bank claims that he is entitled to recover the $3,794.72, the amount of the Barker draft, with interest. The defendant asserts that it has paid the plaintiff all of the plaintiff's moneys on deposit with defendant bank, except this sum of $3,794.72; that it is entitled to offset that sum against the like sum retained by the defendant bank, and that thereby its full obligation to the plaintiff bank has been discharged.

Both parties are agreed that it is federal and not state law which controls the administration or winding up of the affairs of an insolvent national bank, but the defendant contends that the Negotiable Instrument Law of this state determines the relation of the parties down to the moment of closing. Both parties are also agreed that the rights of the parties to this action were fixed at the moment of closing of the plaintiff bank. They

are also agreed that the rules of set-off here obtaining are those adopted by the federal courts.

While the plaintiff bank was still open and doing business under the direction of its officers on June 20, 1931, it received the Barker draft and passbook, charged the amount thereof to the Barker account, closing out the same, credited the amount thereof to the defendant bank on the plaintiff's books, marked "paid" the collection letter which the defendant bank had sent accompanying the Barker draft and passbook, and mailed such collection letter to the defendant bank. So far as the plaintiff bank is concerned, the transaction was entirely completed. If the defendant bank had had no account with the plaintiff bank and had sent a messenger to the plaintiff bank on the morning of the 18th and had received the amount of the Barker draft in cash rather than in credit upon the plaintiff bank's books, no question of the defendant's right to retain and pay out the money to the Albany Savings Bank could be successfully raised.

■ The relation of defendant bank to the plaintiff bank became that of creditor and debtor when the Barker transaction was completed by entries of charge against the Barker account and credit to the defendant bank's account.

While it may be assumed for the purposes of this case that the defendant bank made the plaintiff bank its subagent for the collection of the Barker draft, the moment the plaintiff made the collection by charging the draft to the Barker account, and crediting the amount thereof to defendant's account, it became the debtor of the defendant bank to the amount of the draft. Storing v. First National Bank, 28 F.(2d) 587, 589 (C. C. A. 8).

It follows that, when the collection of the draft in the manner stated made the relations of the two banks in suit that of debtor and creditor to the amount of the draft, immediately the consequent relation of debtor and creditor arose between the defendant and the Albany Savings Bank.

■ The fact that the defendant bank received notice of the closing of the plaintiff bank on June 20th, before it received on Monday morning, June 22d, the notice that the Barker draft had been credited to defendant on plaintiff's books and charged against Barker on her passbook and account, does not in any wise change the status of the parties nor lessen the legal effect of the completed transaction concerning the Barker draft,

which the plaintiff bank carried out before the closing.

The notice of the payment of the Barker draft was no part of the transaction itself, but only evidence of the transaction. The legal effect would be the same if the notice had never been made or mailed.

Under the agreement between the two banks, the defendant bank had the right to charge to plaintiff's account on its books the amount of the Barker draft on June 22nd, the first business day following the mailing thereof by defendant to plaintiff.

Had the defendant bank done so, it would have been a formally completed transaction on the part of the defendant also. Can it be that this entire transaction has been changed because the defendant did not make the entries in its books which it would and could have made, before insolvency intervened. It should not be so held except upon unmistakeable authority.

Since the status of the parties is fixed at the moment of the closing of the plaintiff bank, the later acts of the defendant bank can have no bearing upon the subject. Whether through excess of caution or otherwise they did or did not on their own books charge the plaintiff bank's deposit account, which they might under the agreement have charged on June 22nd, the fact that the defendant sent an erroneous reconcilement on the following July 1st, and the fact that it did not pay the money to the Albany Savings Bank until some time thereafter, are of little moment in determining the question here.

Nor, it seems, does the act of the federal bank examiner, who had charge of the bank for some weeks prior to the time the receiver took charge of the plaintiff bank's affairs, have much weight. The reconcilement statement sent by the examiner was but further evidence of what the plaintiff bank's books showed at the moment of closing, and is stated in the stipulation.

■ It seems, therefore, unnecessary to go into the question of estoppel. Nor does it seem to be necessary to discuss at any length the application of the state statutes to the rights of the parties. The rights of the parties as to each other are controlled by state law down to the time of the closing of plaintiff bank. Since the latter was a completed transaction at and before the moment of closing, the rights, as distinguished from the remedies of the parties, are determined by state law. The federal law controls after closing,

but the federal law is no different in this respect from the state law.

By the books of the plaintiff's own bank prior to the closing, the defendant bank had been credited with the amount of its draft against the plaintiff bank's moneys on deposit with the defendant bank. Had the plaintiff bank never closed, the right of the defendant bank to offset the amount of this Barker draft against the moneys due the plaintiff bank from defendant bank cannot be questioned. The closing of the plaintiff bank after the completion of this transaction has in no wise changed or affected the rights of the respective banks. The two banks were mutual debtors and creditors, and each might offset one against the other.

Both the federal and state authorities support the view here expressed that defendant bank was entitled to offset the credit on the books of the plaintiff bank against the same amount due it from defendant bank. Early v. Federal Reserve Bank, 281 U. S. 84, 50 S. Ct. 235, 74 L. Ed. 718; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Storing v. First National Bank of Minn. (C. C. A.) 28 F.(2d) 587; Commercial Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363; Baldwins' Bank v. Smith, 215 N. Y. 76, 109 N. E. 138, L. R. A. 1918F, 1089, Ann. Cas. 1917A, 500; Consolidated National Bank v. First National Bank, 129 App. Div. 538, 114 N. Y. S. 308, affirmed (no opinion) 199 N. Y. 516, 92 N. E. 1081.

There was no insolvency in the last case, but the status of the parties upon completion of the transaction at the bank at which the check was payable is declared.

The defendant's claim here is not to a preference over the general creditors of the plaintiff bank, as plaintiff contends, but is that it became the creditor of plaintiff bank to the amount of the draft before the latter was closed.

The case of Larabee Flour Mills v. First National Bank, 13 F.(2d) 330 (C. C. A. 8), upon which plaintiff in part relies, is not in point.

The drawer of the draft attached to a bill of lading paid the draft at the insolvent bank by a check drawn on that bank, and that bank drew its draft on a second bank payable to the order of the remitting bank. Before the remitting bank could collect the draft at the second bank the insolvent bank was closed and its draft was never collected. Suit was brought against the receiver of the insolvent bank to recover the amount of its draft as a preference.

No mutual accounts between the insolvent bank and either of the other two banks existed as here, and so the entry was not equivalent to payment and did not give the right of set-off as here. Had there been mutually existing debts at the time of the insolvency as here, the decision would have been that the draft might be set off against moneys due the insolvent bank, as in Storing v. First National Bank (C. C. A.) 28 F.(2d) 587, supra, decided two years later in the same circuit.

Nor does the case of Hirning v. Federal Reserve Bank (C. C. A.) 52 F.(2d) 382, 82 A. L. R. 297, have application here, for there the insolvent bank forwarded checks and cash to the Federal Reserve Bank after the closing in order to enable the latter bank to offset the same against the amount of the deposit of the insolvent bank in the Federal Reserve Bank.

It seems unnecessary for more detailed discussion of other plaintiff's authorities. Cases like Sanders v. Stevens (D. C.) 51 F. (2d) 743; City of Miami v. First Nat. Bank of St. Petersburg (C. C. A.) 58 F.(2d) 561, and others, are not in close analogy. City of Miami Case rather tends to show that a preference exists in favor of defendant bank.

If defendant bank were to be compelled to pay this $3,794.72 to the receiver of the plaintiff bank, it could not recover the same from the Albany Savings Bank or from Barker, the maker of the order of the plaintiff bank, for, by the provisions of the Negotiable Instruments Law of the state, it was liable as debtor upon receiving credit upon the books of the plaintiff bank, and this liability was not affected by the insolvency of the plaintiff bank.

All that the defendant bank could do would be to present a claim to the receiver of the plaintiff bank. This it is not required to do, for it was a creditor of the plaintiff bank for this sum of money before and at the moment of closing, and it may offset the same against the claim of plaintiff bank for a like sum.

Judgment may be entered dismissing the complaint.