## COMMERCIAL BANK OF PENNSYLVANIA *v.* ARMSTRONG.

## ARMSTRONG *v.* COMMERCIAL BANK OF PENNSYLVANIA.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

Nos. 76, 77.   Argued December 5, 6, 1892. — Decided March 6, 1893.

A bank in Ohio contracted with a bank in Pennsylvania, to collect for it at par at all points west of Pennsylvania, and to remit the 1st, 11th and 21st of each month.   In executing this agreement the Pennsylvania bank stamped upon the paper forwarded for collection, with a stamp prepared for it by the Ohio Bank, an endorsement " Pay to " the Ohio Bank " or order for collection for " the Pennsylvania Bank.   The Ohio bank failed, having in its hands, or in the hands of other banks to which it had been sent for collection, proceeds of paper sent it by the Pennsylvania Bank for collection.   A receiver being appointed, the Pennsylvania Bank brought this action to recover such proceeds.   *Held,*

(1) That the relation between the banks as to uncollected paper was that of principal and agent, and that the mere fact that a sub-agent of the Ohio Bank had collected the money due on such paper was not a commingling of those collections with the general funds of the Ohio Bank, and did not operate to relieve them from the trust obligation created by the agency, or create any difficulty in specially tracing them;

(2) That if the Ohio Bank was indebted to its subagent, and the collections, when made, were entered in their books as a credit to such indebtedness, they were thereby reduced to possession, and passed into the general funds of the Ohio Bank;

(3) That by the terms of the arrangement the relation of debtor and creditor was created when the collections were fully made, the funds being on general deposit with the Ohio Bank, with the right in that bank to their use until the time of remittance should arrive.

On the 23d of November, 1887, the Commercial National Bank of Pennsylvania filed its bill of complaint in the Circuit Court of the United States for the Southern District of Ohio,

against David Armstrong, receiver of the Fidelity National Bank of Cincinnati, the purpose of which bill was to charge the defendant, as trustee of the plaintiff, for $17,460.32, certain funds in his possession. To this bill of complaint the defendant duly appeared and answered. After the taking of testimony, the case was submitted on pleadings and proofs, and on the 8th of June, 1889, a decree was entered in favor of the plaintiff, directing the defendant to pay to it the sum of $7209.59, which he was adjudged to hold as trustee, and also whatever sums he might thereafter receive from the receiver of the Fifth National Bank of St. Louis, Missouri, as dividends upon the sum of $1577.89, the amount of paper transmitted to that bank for collection. From this decree both parties appealed to this court. The opinion of the Circuit Court was delivered by Jackson, Circuit Judge, and will be found in 39 Fed. Rep. 684.

The transactions between the two banks originated in the following letter, sent by the Fidelity National Bank to the plaintiff :

"U. S. Depository.

"The Fidelity National Bank.

"Capital, $1,000,000.

"Briggs Swift, president; E. L. Harper, vice-president; Ammi Baldwin, cashier; Benjamin E. Hopkins, ass't cashier.

"CINCINNATI, 2, 12, 1887.

"Com'l Nat. B'k, Philada., Pa.

"GENTLEMEN: Enclosed herewith we hand you our last statement, showing us to be the second bank in Ohio in deposits in the tenth month of our existence. We should be pleased to serve you, and trust you will find it to your advantage to accept one of the following propositions:

"No. 1. We will collect all items at par and allow $2\frac{1}{2}\%$ interest on daily balances, calculated monthly. We will remit any balance you have above $2000 in New York draft, as you direct, or ship currency at your cost for expressage.

"No. 2. Will collect at par all points west of Pennsylvania and remit the 1st, 11th, and 21st of each month.

"No. 3. We will collect at par Ohio, Indiana, and Kentucky items, and remit balance every Monday by draft on New York.

"We do not charge for exchange on propositions No. 1, 2 and 3.

"No. 4. Will collect Cincinnati items and remit daily at 40 cents per thousand, or 20 cents for $500 or less.

"National banks not in a reserve city can count all they have with us as reserve.

"Your early reply will oblige, respectfully yours,

"E. L. HARPER, V. P."

To this letter the plaintiff replied on February 18, accepting proposition No. 2; and thereafter, from time to time, forwarded paper for collection. The Fidelity Bank caused to be made and sent to the plaintiff a rubber stamp, for use in endorsing paper thus forwarded. This stamp read as follows:

"Pay Fidelity National Bank of Cincinnati, O., or order, for collection for Commercial Bank of Philadelphia, Pa.

"E. P. GRAHAM, Cashier."

Business was carried on between the two banks under this arrangement until June 20, 1887, when the Fidelity Bank failed, having in its hands, or in the hands of other banks to which the same had been sent by it for collection, proceeds of paper forwarded by plaintiff after June 4, amounting to $16,851.92. The only correspondence which took place during this time between the parties, which can be considered as throwing any light upon the arrangement between them, was a letter from the plaintiff of May 25, as follows: "We don't wish to complain, but would like to understand why your remittance to us of May 21 only included items sent you up to May 14 and received by you on the 16th. We have to explain these things to our depositors, and wish to act intelligently on the subject." And a reply in these words: "We collect at par and include in our remittances everything collected to date."

The conclusions of the Circuit Judge were, that the relation between the two banks·was that of principal and agent; a relation which continued not only while the paper was held by the Fidelity Bank, but after the moneys had been collected thereon; but that in order to enforce a trust in favor of the plaintiff, as to any of the moneys so collected, they must be specifically traceable, and that it was not sufficient to show that by collection they had passed into the general funds of the bank. This paper had substantially all passed into the hands of other banks, to whom it had been sent by the Fidelity Bank, as its subagents, and the Circuit Judge held that if the Fidelity was indebted to these local banks, subagents, and the collections, when made, were entered in their books as a credit to such indebtedness, they must be considered as reduced to possession and as having passed into the general funds of the Fidelity; but that, on the other hand, if the Fidelity was not indebted to the subagent banks, and the collections remained in their hands to be subsequently remitted to the Fidelity, and in fact were paid to the receiver after his appointment, they were specifically traceable, and were therefore subject to the trust created by the relationship between the two banks, and payment thereof could be enforced out of the funds in the hands of the receiver.

*Mr. George Hoadly, Jr.*, for the Commercial Bank. *Mr. Edward Colston, Mr. John Sparhawk and Mr. Judson Harmon* were with him on the brief.

As to the appeal of the Commercial Bank, the Fidelity Bank received from it for collection, as its agent, the paper, the proceeds of which are here in controversy. Thereafter, the same having come into the hands of subagencies of the Fidelity Bank, which subagencies had from the form of the endorsement actual notice of complainant's rights, respondent, without the knowledge or consent of complainant, converted the same to his own use, by consenting that said subagencies should apply the same in payment of debts due to them from the Fidelity Bank. There was in cash in the Fidelity at the

date of its failure $110,000, which came to the hands of respondent as its receiver. We claim that under the circumstances thus detailed complainant is entitled to a charge on the funds in the Fidelity Bank for the amount of its claim.

The Fidelity Bank having received complainant's paper upon trust to collect the same and remit the proceeds, might collect it in many ways. If, for example, the paper were the check of one of its customers, on his account, it would simply charge the check to his account, and thereupon the proceeds would be a part of the cash in its hands, not actually distinguished, but entirely capable of being so by taking out that amount of money. So if being indebted to a correspondent it paid its debt with complainant's paper. At the time it did so it collected that paper, at least as against complainant, and complainant had a right to assert that it had that amount of cash in its treasury. That being so, there was no lawful way of getting it out except by paying it to complainant, and the rule of *Knatchbull* v. *Hallett*, 13 Ch. D. 696, that drafts will always be applied to that which may lawfully be drawn out, applies, and the complainant's money in both the foregoing cases was in the Fidelity Bank at the time of its failure, and came to the defendant as a trustee for complainant. *Peak* v. *Ellicott*, 30 Kansas, 156; *People* v. *Rochester City Bank*, 96 N. Y. 32; *McLeod* v. *Evans*, 66 Wisconsin, 401.

Upon the authorities cited and for the reasons given we submit that the decree of the Circuit Court, so far as it denied complainant the relief sought in the bill, should be reversed, and that a decree should be rendered in this court requiring respondent to pay to complainant the amount of its claims in full, with interest and costs

*Mr. John W. Herron* for Armstrong, receiver.

I claim that from the manner in which it was sent and received, being sent for credit, and being at the time charged to the Fidelity National, and being credited by the Fidelity as it was received, that amounted, as between the two banks, to a collection. The paper became the property of the Fidelity

with the endorsement on it of the Commercial, which endorsement enabled the Fidelity to hold the Commercial for repayment, if it was not paid and properly protested. I, however, regard this as in the present case immaterial. It was certainly collected, when the payer of it paid it to the bank which held it, which bank had received it from the Fidelity for collection. And if such payment was made before the failure of the Fidelity, as was the case as to almost all the paper in question, it was a collection of the paper by the Fidelity. The report of the master gives a list of the paper so paid; and the dates of payment. The last statement of account was forwarded by the Fidelity on June 11th, and included all items received to June 8th, inclusive. The first credits not included in that statement and remitted for were made June 9th, and other collections were made on each succeeding day until the 20th, the day preceding the closing of the bank. The collection by the correspondent banks was a collection by the Fidelity Bank. The collecting bank was the agent of the Fidelity, and not of the Commercial. And, therefore, these payments are to be regarded precisely as if on those days these sums had been paid directly to the Fidelity Bank. They had all been credited to the Commercial Bank before the failure; they had been charged before the failure to the corresponding banks, and credited by the corresponding banks to the Fidelity National. No notice of the payment was necessary or usual.

If this paper had been collected by the Fidelity prior to its failure, and the Fidelity had become the debtor to the Commercial for the amount, it is contrary to the intent of the banking act to pay this one creditor in full, in advance of other creditors. See *Reeves* v. *State Bank of Ohio*, 8 Ohio St. 465; *Hoover* v. *Wise*, 91 U. S. 308; *Bank of Crown Point* v. *Bank of Richmond*, 76 Indiana, 561; *Butchers' & Drovers' Bank* v. *Hubbell*, 117 N. Y. 384.

Admitting that the paper was sent for collection merely, and that until the collection was made the relation of principal and agent existed, that relation did not continue after the collection of the paper and the credit of the proceeds in account on the books of the several parties. *Smedes* v. *Utica*

*Bank,* 20 Johns. 372; *Jockuch* v. *Towsey,* 51 Texas, 129; *Marine Bank* v. *Fulton Bank,* 2 Wall. 252; *People* v. *Rochester City Bank,* 93 N. Y. 582; *Marine Bank* v. *Rushmore,* 28 Illinois, 463; *Tinkham* v. *Duckworth,* 31 Illinois, 519; *Planters' Bank* v. *Union Bank,* 16 Wall. 483; *In re Bank of Madison,* 5 Bissell, 515; *Manufacturers' Bank* v. *Continental Bank,* 148 Mass. 553; *Freeman's Bank* v. *Nat. Tube Works Co.,* 151 Mass. 413.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

We agree with the Circuit Judge that the relation created between the banks as to uncollected paper was that of principal and agent, and that the mere fact that a subagent of the Fidelity Bank had collected the money due on such paper, was not a mingling of those collections with the general funds of the Fidelity, and did not operate to relieve them from the trust obligation created by the agency of the Fidelity, or create any difficulty in specifically tracing them. As to such paper, the transaction may be described thus: The plaintiff handed it to the Fidelity, the Fidelity handed it to a subagent, the subagent collected it and held the specific money in hand to be delivered to the Fidelity; then the failure of the Fidelity came, and the specific money was handed to its receiver. That money never became a part of the general funds of the Fidelity; it was not applied by the subagent in reducing the indebtedness of the Fidelity to it, but it was held as a sum collected, to be paid over to the Fidelity, or to whomsoever might be entitled to it. The Fidelity received the paper as agent, and the endorsement "for collection" was notice that its possession was that of agent and not of owner. In *Sweeny* v. *Easter,* 1 Wall. 166, 173, in which there was an endorsement "for collection," Mr. Justice Miller said: "The words 'for collection' evidently had a meaning. That meaning was intended to limit the effect which would have been given to the endorsement without them, and warned the party that, contrary to the purpose of a general or blank endorsement,

this was not intended to transfer the ownership of the note or its proceeds." And in *White* v. *National Bank*, 102 U. S. 658, 661, where the endorsement was "for account," the same Justice, speaking of the endorsement, said: "It does not purport to transfer the title of the paper, or the ownership of the money when received." The plaintiff, then, as principal, could unquestionably have controlled the paper at any time before its payment, and this control extended to such time as the money was received by its agent, the Fidelity. *Butchers' &c. Bank* v. *Hubbell*, 117 N. Y. 384; *Manufacturers' Bank* v. *Continental Bank*, 148 Mass. 553; *Freeman's Bank* v. *National Tube Works*, 151 Mass. 413; *Armstrong* v. *National Bank of Boyerstown*, 14 S. W. Rep. 411, (Court of Appeals of Kentucky); *Crown Point National Bank* v. *Richmond National Bank*, 76 Indiana, 561. In those cases the suits were against subagent banks. It is true, that in most of them the collection was made by the subagent after the avowed insolvency of the agent, but that fact, we cannot think, is decisive. If, before the subagent parts with the money or credits it upon an indebtedness of the agent bank to it, the insolvency of the latter is disclosed, it ought not to place the funds which it has collected, and which it knows belong to a third party, in the hands of that insolvent agent or its assignee; and, on the other hand, such insolvent agent has no equity in claiming that this money, which it has not yet received, and which belongs to its principal, should be transferred to and mixed with its general funds in the hands of its assignee, for the benefit of its general creditors, and to the exclusion of the principal for whom it was collected. Whether it be said that such funds are specifically traceable in the possession of the subagent, or that the agent has never reduced those funds to possession, or put itself in a position where it could rightfully claim that it has changed the relation of agent to that of debtor, the result is the same. The Fidelity received this paper as agent. At the time of its insolvency, when its right to continue in business ceased, it had not fully performed its duties as agent and collector; it had not received the moneys collected by its subagent. They

were traceable as separate and specific funds, and, therefore, the plaintiff was entitled to have them paid out of the assets in the hands of the receiver, for when he collected them from these subagents he was in fact collecting them as the agent of the principal. No mere book-keeping between the Fidelity and its subagent could change the actual status of the parties or destroy rights which arise out of the real facts of the transaction.

We also agree with the Circuit Court, in its conclusions as to those moneys collected by subagents to whom the Fidelity was in debt, and which collections had been credited by the subagents upon the debts of the Fidelity to them, before its insolvency was disclosed, for there the moneys had practically passed into the hands of the Fidelity, the collection had been fully completed. It was not a mere matter of book-keeping between the Fidelity and its agents; it was the same as though the money had actually reached the vaults of the Fidelity. It was a completed transaction between it and its subagents, and nothing was left but the settlement between the Fidelity and the principal — the plaintiff. The conclusions of the Circuit Court were based upon the idea that these collections could not be traced, because they had passed into the general fund of the bank. We think, however, a more satisfactory reason is found in the fact that, by the terms of the arrangement between the plaintiff and the Fidelity, the relation of debtor and creditor was created when the collections were fully made. The agreement was to collect at par, and remit the first, eleventh, and twenty-first of each month. Collections intermediate those dates were, by the custom of banks and the evident understanding of the parties, to be mingled with the general funds of the Fidelity, and used in its business. The fact that the intervals between the dates for remitting were brief is immaterial. The principle is the same as if the Fidelity was to remit only once every six months. It was the contemplation of the parties, and must be so adjudged according to the ordinary custom of banking, that these collections were not to be placed on special deposit and held until the day for remitting. The very fact that col-

lections were to be made at par shows that the compensation for the trouble and expense of collection was understood to be the temporary deposit of the funds thus collected, and the temporary use thereof by the Fidelity.   The case of *Marine Bank* v. *Fulton Bank*, 2 Wall. 252, is in point, though it may be conceded that the facts in that, tending to show the relation of debtor and creditor, are more significant than those here.   In the spring of 1861, the Fulton Bank of New York sent two notes for collection to the Marine Bank of Chicago; there being some trouble about currency, the Fulton Bank requested the Marine Bank to hold the avails of the collection subject to order, and advise amount credited.   Afterwards the Marine Bank sought to pay in the currency which it had received on the collection, then largely depreciated, but its claim in this respect was denied, Mr. Justice Miller, speaking for the court, saying: "The truth undoubtedly is, . . . that both parties understood that, when the money was collected, plaintiff was to have credit with the defendant for the amount of the collection, and that defendant would use the money in its business.   Thus the defendant was guilty of no wrong in using the money, because it had become its own. It was used by the bank in the same manner that it used the money deposited with it that day by city customers; and the relation between the two banks was the same as that between the Chicago bank and its city depositors.   It would be a waste of argument to attempt to prove that this was a debtor and creditor relation.   All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand.   The case before us is not of the former class. It must be of the latter."

That reasoning is applicable here.   Bearing in mind the

custom of banks, it cannot be that the parties understood that the collections made by the Fidelity, during the intervals between the days of remitting, were to be made special deposits, but on the contrary, it is clear that they intended that the moneys thus received should pass into the general funds of the bank, and be used by it as other funds, and that when the day for remitting came, the remittance should be made out of such general funds.

The conclusions, therefore, reached by the Circuit Court were correct, and the judgment is

*Affirmed.*