## ROREBECK v. BENEDICT FLOUR & FEED CO.

## BENEDICT FLOUR & FEED CO. v. ROREBECK.

Circuit Court of Appeals, Eighth Circuit.
May 16, 1928.

Nos. 7660, 7673.

1. **Banks and banking ⬅166(1)—Drawer held not entitled to preference, on theory of trust relationship, where drafts were paid by checks on collecting bank, which became insolvent.**

Drawer of drafts, which were paid by drawees by checks drawn on bank to which drafts had been sent for collection, *held* not entitled to preference on failure of bank, on theory of trust relationship; there having been no increase in the bank's funds.

2. **Banks and banking ⬅166(1)—Drawer held not entitled to preference, where draft was paid by check, which insolvent collecting bank used in exchange of checks with another bank.**

Where draft sent to collecting bank was paid by drawee by check on another bank, which check was used in exchange of checks between collecting bank and such other bank, *held*, that drawer was not entitled to preference on insolvency of collecting bank, since its funds were not augmented by payment of the draft.

Appeal from the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Suit by the Benedict Flour & Feed Company against E. F. Rorebeck, receiver of the First National Bank of Forest City, Iowa. From the judgment, both parties appeal. Reversed in part.

B. J. Thompson and Alan Loth, both of Forest City, Iowa, for receiver.

C. H. E. Boardman, of Marshalltown, Iowa, for Benedict Flour & Feed Co.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and OTIS, District Judges.

OTIS, District Judge. These are cross-appeals from the judgment below in a suit in equity brought by the Benedict Flour & Feed Company, an Iowa corporation, hereinafter designated as the plaintiff, against the First National Bank of Forest City, Iowa, and the receiver of that bank, hereinafter designated as the defendants. The general nature of the plaintiff's claim, as stated in its petition is this:

Through the Fidelity Savings Bank of Marshalltown, Iowa, plaintiff drew three sight drafts on merchants of Forest City, Iowa, which were sent to the defendant bank for collection. The drafts were paid in full by the drawees in the manner following:

One, for $1,113.75, drawn on Emil Anderson, was paid by him by check against his account in the defendant bank; another, for $440, drawn on Sam Bloom, was also paid by him by check against his account in the defendant bank; the third, $217.50, drawn on C. M. Larson, was paid by him by check drawn on a bank other than the defendant bank.

On November 4, 1925, the defendant bank reported collection and sent to the forwarding bank drafts for the proper amounts, drawn on the Federal Reserve Bank of Chicago. The Federal Reserve Bank refused to pay these drafts, for the reason that on November 5, 1925, at the end of banking hours on that day, the defendant bank was closed by a government examiner. When closed it had cash on hand in excess of the amount of plaintiff's claim.

The total amount paid by Anderson, Bloom, and Larson to the defendant bank, less commissions for collection, was $1,769.-35. The defendant receiver having refused to pay plaintiff this amount, this suit was brought, on the theory that the amount collected by the defendant bank was a trust fund, and that the plaintiff was entitled to payment in full out of funds in the receiver's hands and before general creditors. The case was tried on an agreed statement of facts. It included, among other matters, the facts alleged by plaintiff as set out above, amplified as follows:

On November 2, 1925, Emil Anderson had to his credit in his checking account in the First National Bank of Forest City, Iowa, more than $1,800. On that day he went to the First National Bank, Forest City, Iowa, and wrote and signed and delivered to said bank his check, drawn on his account therein, for the full amount of the draft No. 1928, to wit, $1,113.75. The First National Bank, Forest City, accepted the check, charged it against Anderson's account on its books, marked same "Paid," and surrendered the draft No. 1928 (also marked "Paid") to Anderson in exchange for this check.

On November 2, 1925, Sam Bloom & Sons had to their credit in their checking account in the First National Bank, Forest City, Iowa, more than $800. On that day a member of this firm went to the said bank, and wrote, signed, and delivered to said bank a check of said firm, drawn upon its said account in said bank for the full amount of draft No. 1929, to wit, $440. Whereupon said bank accepted the check, charged it against Sam Bloom & Sons' account on its

books, marked the same "Paid," and surrendered the draft No. 1929 (also marked "Paid") in exchange for this check.

In the afternoon of November 2, 1925, C. M. Larson delivered to the First National Bank, Forest City, Iowa, checks for $217.50, on his checking account in another bank, to wit, the Forest City National Bank, in exchange for which he received draft No. 1920, stamped "Paid." These checks were presented at the close of business of November 2, 1925, by the First National Bank to the Forest City National Bank, together with a number of other checks drawn on the latter bank. The Forest City National Bank then held checks drawn on the First National Bank of a total amount of $2,277.37 in excess of those held by the First National Bank on it. These sets of checks were that evening exchanged or cleared between the banks, and, to make up the deficiency in the clearings against it, the First National Bank gave to the Forest City National Bank a Chicago draft on the Federal Reserve Bank of Chicago, which was duly honored in the sum of $2,277.37. No cash passed between these banks for any of these checks.

Upon the facts thus stated the trial court found that "a trust relation existed between the plaintiff and the defendants, and that the plaintiff is entitled to have its claim established as a preferred claim to the extent of the lowest amount of cash on hand and available for transmission after the completion of the collection and before the closing of the bank; that such an amount was, as shown by the evidence, the sum of $1,275.49 on hand at the close of business November 4, 1925; and that the balance of plaintiff's claim should be established as a general claim in the sum of $445.76." The decree was that "plaintiff have and recover of the defendants the sum of $1,721.25, and that of such amount $1,275.49 be established as a preferred claim against the funds in the hands of the receiver, to be prorated with other preferred claims of the same class, and that the balance in the sum of $445.76 be established as a general claim against all funds available to the payment of general creditors."

Defendants appealed from that part of the decree allowing plaintiff a preference as to a part of its claim, and the plaintiff from that part denying preference as to the remainder.

[1] 1. First as to the payments made by Bloom and Anderson, which were by checks drawn upon the defendant bank, and which

obviously did not result in any increase in the bank's funds. As to this branch of the case the recent decisions of this court in Larabee Flour Mills v. First National Bank of Henryetta, Okl., and Farmers' National Bank of Burlington, Kan., v. Kansas Flour Mills Co., decided June 12, 1926, and reported as one case in 13 F.(2d) 330, are squarely in point. In a similar state of facts it was there said:

"It is difficult to explain or understand by what equitable right one who has not contributed to the creation of a fund should be given a special and superior interest therein, though some of the state courts seem to so hold. The collecting banks acted as agents (Commercial Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363), and had they collected and retained tthe funds called for by the drafts, as was their duty on account of insolvency, the equities of claimants would be plain; but, instead of doing so, they merely shifted credits on their books and records. No part of the funds in the banks when they failed was placed there by claimants, or by any one for them. In each case the draft was paid by check on the insolvent. No additional funds were brought into the bank by either transaction. If the drafts which they held for collection had been paid in currency or by check on some other bank, the insolvents' assets would have been increased that much, when thereafter their remittance drafts were dishonored; and in that event equity would have regarded the collections as trust funds, followed them into the increased assets, and to the extent of the increase applied them first in discharge of these claims. This is our conception of the rule and the reason for it, applied in the federal courts. It has been repeatedly announced by this court."

It follows, from this case and the numerous supporting authorities therein cited, that the plaintiff is entitled to no preference as to the Bloom and Anderson payments.

[2] 2. The Larson payment was to the defendant bank, not as in the other instances by check on the defendant bank, but by check on another bank, the Forest City National Bank, but in the exchange of checks between that bank and the defendant bank, checks of the two banks were offset, and no cash came into the defendant bank by reason of the Larson check. So that here also the funds of the defendant bank were not augmented by the payment, and plaintiff is entitled to no preference. Larabee Flour Mills v. First National Bank of Henryetta, Okl., supra; Mechanics & Metals National

Bank of New York v. Buchanan (C. C. A.) 12 F.(2d) 891. The use of the Larson check in the exchange of checks brought about no increase in the assets of the defendant bank, but, as was said in a like situation by this court in Farmers' National Bank v. Pribble (C. C. A.) 15 F.(2d) 175, 177, "the only effect of the use of the draft * * * in the clearance * * * was not in any way to increase the assets of the * * * bank, but possibly, perhaps probably, to diminish its indebtedness or liability by the amount of the draft, and such a reduction of its indebtedness creates no preferential trust in or lien on the assets of the insolvent over the claims of its general creditors."

Our conclusion is that the plaintiff's claim is entitled to no preference, and the judgment below, to the extent that it decrees a preference and assesses the costs of the cause against the defendants, is reversed. Our finding is for the appellant in No. 7660 and for the appellee in No. 7673.