**SCHILLING v. ROWE et ux.**

No. 7030.

Circuit Court of Appeals, Ninth Circuit.

April 3, 1933.

George E. Farrand and Leonard B. Slosson, both of Los Angeles, Cal., for appellant.

H. A. Goldman, of Los Angeles, Cal., for appellees.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

Appellees brought a bill in equity to subject property in the hands of a receiver of the United States National Bank of Los Angeles, hereinafter referred to as "the bank," to an equitable lien in their behalf for the sum of $2,500, with interest from August 17, 1931, and to require that said sum be paid over to them by the receiver, upon the ground that the said sum represented a trust fund deposited with the bank in connection with a transfer of real estate, which had come into the hands of the receiver of the bank. The matter was referred to a special master, who recommended that the receiver pay complainants the sum of $2,500 with 7 per cent. interest from August 18, 1931, and costs, and that an equitable lien be impressed upon funds in the receiver's hands in the sum of $2,500. Exceptions were filed by the receiver to this report, and the court approved the report of the special master except as to the allowance of interest, and also by stipulation deducted $96.54 due from the respondent, and thereupon ordered the receiver to pay the sum of $2,403.43 to the appellees forthwith from the funds in his hands as such receiver "except there be other preferential claims requiring that a pro rata classification be made." The receiver takes this appeal.

The receiver concedes that the fund ordered paid was a trust fund, but claims that the order was erroneous on the ground that neither the funds of the bank nor the assets coming into the hands of the receiver were augmented by the checks deposited to make up the fund "because these checks were never reduced to cash but were used by the bank to pay its obligations to the banks on which the checks were drawn." The history of the transaction may be briefly summarized as follows:

The appellants, Louis H. Rowe and his wife, Esther B. Rowe, had arranged to sell a note for $3,000, secured by a trust deed

to John N. Hill, guardian of the estate of Leslie W. Payne, a minor, for the sum of $2,500 to be paid by the guardian when the title of the grantor in the trust deed, George B. Hatt, and the validity of the trust deed as a first lien were satisfactorily established. To this end an escrow agreement was entered into on August 13, 1931, between the guardian and Louis H. Rowe and Esther B. Rowe, appellants, who were the payees of the note, whereby said payees deposited the trust deed and the promissory note for $3,000, payable to them and indorsed without recourse to the guardian with the escrow department of the bank. The escrow instructions authorized the delivery of the trust deed and the note indorsed as aforesaid to the guardian upon the receipt by the trustee of a policy of title insurance, showing the trust deed to be a first lien upon the property described therein. The guardian, contemporaneously therewith, delivered four United States Liberty bonds in the sum of $1,900 with certain coupons attached and instructed the escrow department of the bank to sell the Liberty bonds, and upon being advised of the difference between the sale price and the $2,500 to be paid by him to the appellees, agreed to forthwith deposit the difference in cash. The instruments therein described were deposited with the bank on August 13th and the Liberty bonds were deposited by the guardian with instructions to "forthwith cash all of said Liberty bonds." In pursuance of these instructions the Liberty bonds were delivered on that date by the escrow department of the bank to the United States National Securities Company, which company sold the bonds to the Security First National Bank of Los Angeles for $2,015.75. In payment therefor the Security First National Bank of Los Angeles issued its check drawn on itself for that sum on August 14, 1931. This check was deposited by the United States National Securities Company in its account with the bank and it was cleared through the Los Angeles clearing house on August 15, 1931. Immediately upon the deposit of the check of the Security First National Bank of Los Angeles for $2,015.75 with the bank, the United States National Securities Company issued its check on said account, payable to the bank for $2,010.75, being $5 less than the check deposited by it. The purpose of this form of transaction was to enable the securities company to retain in its account at the bank the $5 due it as its commission for making the sale of the bonds.

■ On August 14, 1931, the guardian drew a check on his account in the German Amer-

ican Savings Bank of Los Angeles for the sum of $494.25, the balance necessary to complete the deposit of $2,500, and delivered it to the escrow department of the bank on that date. This check was cleared by the respondent bank on August 17, 1931. On that date the bank turned into the clearing house checks which it held and which were drawn on other banks in the aggregate sum of $170,998.69. The other local banks on that day delivered to the clearing house checks drawn on the bank aggregating $298,027.03. The difference between these two amounts, $127,028.34, was charged against the account of the bank on the books of the Federal Reserve Bank, in which at that time there was a balance of between $525,485.60, the highest amount shown on the books of the Federal Reserve Bank as a credit to the bank on that day, and $372,227.97, the lowest amount shown on that day. The check for $2,015.75, together with other checks amounting in all to $192,740.38, delivered by the bank, were cleared on August 15, 1931, through the Los Angeles clearing house. On that day other banks had delivered to the clearing house checks drawn on the bank totaling $318,199.96. The difference between these two items, representing the balance due from the bank of $125,459.58, was charged against the account of the bank in the Federal Reserve Bank. Thus each check was used, together with other checks payable to the bank, in offsetting the demands of the drawee banks against the bank, and in addition thereto it was necessary for the Federal Reserve Bank to pay to the drawee banks or to credit them on its books an amount sufficient to cover the balance due the drawee banks respectively over and above the amount of the checks held by the bank against them. It may be inferred that on the day the $2,015.75 check of the Security First National Bank of Los Angeles was cleared, the balance was in favor of the latter bank, and that on the date the $494.25 check drawn on the German American Savings Bank of Los Angeles was cleared, the balance was in favor of the latter, as the burden of proof, if otherwise, was on the appellee. The two checks were thus used to offset current indebtedness due these respective drawee banks, and in addition, it was necessary to credit each of them on the books of the Federal Reserve, with the balance not thus offset, a corresponding charge being made against the bank on the books of the Federal Reserve Bank. It is evident that the amount of the charge on the books of the Federal Reserve Bank against the bank would have been $2,015.75 more on Au-

gust 15th and $494.25 more on August 17th than was the case because of the use of the two checks above mentioned to set off the claims of the drawee banks. The claim of the appellee is that in this fashion the assets of the bank were increased and that the increase came into the possession of the receiver. The balance of the bank in the Federal Reserve Bank on August 15, 1931, was $390,360.31, and it is not questioned that there was at all times from and after the clearance on August 15th to the time when the receiver took charge, a credit balance in the bank's account in the Federal Reserve Bank largely in excess of the amount of the two checks above mentioned. This balance at the time the receiver took charge was about $372,227.97.

We for the moment ignore the fact that the check for $2,015.75 was deposited by the securities company in its account in the bank and was forwarded for collection on its behalf, and assume for the moment that the credits derived from the collection of this check came into the possession of the bank at the time of the clearance on August 15, 1927, if at all.

The authorities are uniform that where checks held by a bank in its trust capacity are used by the bank to pay indebtedness due from it to other banks on account of negotiable paper held by them through the ordinary process of clearing, or otherwise, that there is no augmentation of the assets which come into the hands of the receiver within the rule making the priority of the beneficiary depend upon such augmentation. United States Nat. Bank of Centralia v. City of Centralia (C. C. A. 9) 240 F. 93; City Bank v. Blackmore (C. C. A.) 75 F. 771, 773; Empire State Surety Co. v. Carroll County (C. C. A. 8) 194 F. 593, 606, pt. 10; Cuttell v. Fluent (C. C. A.) 51 F.(2d) 974; First Nat. Bank v. Williams (D. C.) 15 F.(2d) 585; Farmers' Nat. Bank v. Pribble (C. C. A. 8) 15 F.(2d) 175, and cases cited; Burnes Nat. Bank v. Spurway (D. C.) 28 F.(2d) 40; Nyssa-Arcadia Drainage District v. Bank (D. C.) 3 F.(2d) 648; Rorebeck v. Benedict, etc., Co. (C. C. A.) 26 F.(2d) 440; Schumacher v. Harriett (C. C. A.) 52 F.(2d) 817, 818, 82 A. L. R. 1. In Schumacher v. Harriett, supra, Judge Parker, speaking for the Circuit Court of Appeals for the Fourth Circuit, said: "The rule is well settled that where property or funds which are the subject of a trust are used by a bank in such way as merely to decrease its liabilities and not to augment its assets, no charge upon the assets arises in favor of the cestui que trust."

In the case at bar if the transaction had stopped at the clearing house and the bank on that day had paid in cash the balance against it to the banks upon which the deposited checks had been drawn, there could be no serious contention that the assets of the bank coming into the hands of the receiver would be augmented by the transaction, nor is the situation any different in principle where the payment was by a transfer of credit in the Federal Reserve Bank from the bank to the drawee banks.

The decree is reversed.