THOMPSON v. COMMON SCHOOL DIST. NO. 54, IN TWIN FALLS COUNTY, IDAHO.

SAME v. COMMON SCHOOL DISTS. Nos. 32, 36, 47, 59, and 62, IN TWIN FALLS COUNTY, IDAHO.

No. 7111.

Circuit Court of Appeals, Ninth Circuit. Oct. 23, 1933.

Frank L. Stephan and J. H. Blandford, both of Twin Falls, Idaho, for appellant.

Marlin J. Sweeley and Everett M. Sweeley, both of Twin Falls, Idaho, for appellees.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from a decree in favor of the appellees in a suit brought to obtain a preference to the assets of the insolvent Twin Falls National Bank, of Twin Falls, Idaho.

The record discloses that, during the year 1929, the Twin Falls National Bank, in good faith and for valuable consideration, purchased several forged orders for warrants drawn upon the county auditor of Twin Falls county, Idaho. The bank presented the orders to the county auditor and received warrants therefor drawn on the county treasurer in payment or redemption of the forged orders, seven in number. The bank then took the warrants to the county treasurer, who, under the Idaho law, is treasurer of the common school districts within his county, and the county treasurer in turn redeemed the warrants by drawing and delivering to the bank his checks drawn on the Twin Falls Bank & Trust Company, or the First National Bank, both of Twin Falls, Idaho.

The dates and amounts of the several warrants and checks are not material here; suffice it to say they were dated prior to the insolvency of the Twin Falls National Bank, and at the time the bank became insolvent it had on hand cash in an amount sufficient to meet the claims of the appellees.

After learning that the orders for the warrants were forged, the school districts, in 1931, brought separate suits in the state court against the Twin Falls National Bank to recover the amounts of the respective warrants, and in each instance recovered a judgment, with interest and costs, against the bank for the amount of the forgery, aggregating approximately $1,600.

On November 23, 1931, the Twin Falls National Bank became insolvent and ceased doing business. After the appointment of a receiver for the bank, the school districts filed claims with the receiver for the amounts of the above-described judgments obtained in the state court, and claimed a preference to the assets of the bank over the general creditors.

Upon rejection of the claims by the receiver, the school districts commenced two actions in the court below to obtain the preference it claimed. The actions, being similar, were consolidated for trial and are likewise presented here on a single record.

The bill alleged: "That at all times from the times said warrants were paid, as above set forth, up to and including the day when said Bank became insolvent and ceased doing business and when the receiver took possession of its money and other assets, said Bank had on hand money in an amount greater than the amount of the claims of said School District and held sufficient thereof as a trust fund in favor of the School District to pay its claims in full, which fund was taken possession of by said receiver."

The prayer of the bill was that the claims of the school districts "be established and declared to be preferred claims against the mon-

ey and assets of the Twin Falls National Bank that came into the possession of * * * receiver * * * and ordering and directing * * * receiver · * * * to make payments of said several claims prior and in preference to the claims of the general creditors of said Bank."

The answer alleged that no part of the proceeds of the checks issued by virtue of the forged orders ever came into the possession or custody of the bank or of its receiver, and alleged that "the funds of said Twin Falls National Bank have not been augmented by the proceeds of said warrant or by the proceeds of any check or draft given in payment of said warrant and no part of the proceeds is now in said bank or among its fund and no part of said proceeds is now in the custody, care or possession of * * * receiver."

The trial court entered a decree awarding the school districts a preference to the assets of the bank over the general creditors, on the theory that the assets of the bank had been augmented by the checks issued in redemption of the forged orders, thereby requiring the application of the principle "that the fund will be treated as trust property in the hands of the bank at the time it suspended business."

On this appeal the receiver contends that the money of the school districts, as represented by the checks referred to, did not come into his hands, and therefore appellees are not entitled to a preference in the payment of their claims.

▮ The case of Schilling, Receiver, v. Rowe, 64 F.(2d) 188, 190, from this court, was a suit to impress funds in the hands of the receiver of the United States National Bank of Los Angeles with an 'equitable lien, upon the ground that the checks representing the amount claimed constituted a trust fund deposited with the bank. The receiver claimed that neither the funds of the bank nor the assets coming into his hands had been augmented by the transaction in question, "because these checks were never reduced to cash but were used by the bank to pay its obligations to the banks on which the checks were drawn." In upholding the contention of the receiver, we said: "The authorities are uniform that where checks held by a bank in its trust capacity are used by the bank to pay indebtedness due from it to other banks on account of negotiable paper held by them through the ordinary process of clearing, or otherwise, that there is no augmentation of the assets which come into the hands of the receiver within the rule making the priority of the

beneficiary depend upon such augmentation. [Citing cases.]"

See, also, Schumacher v. Harriett (C. C. A. 4) 52 F.(2d) 817, 818, 82 A. L. R. 1, where it is said: "The rule is well settled that where property or funds which are the subject of a trust are used by a bank in such way as merely to decrease its liabilities and not to augment its assets, no charge upon the assets arises in favor of the cestui que trust."

We believe that the rule must be applied in this case.

▮ In connection with one of the checks here involved, the stipulation of facts recites: "That said Twin Falls National Bank forwarded said check to the Federal Reserve Bank at Salt Lake City and said Federal Reserve Bank collected said draft from said National Copper Bank and thereupon gave Twin Falls National Bank credit for said sum and thereafter said Federal Reserve Bank paid out all of the said sum of $774.04 in satisfaction of drafts drawn by Twin Falls National Bank upon its account with said Federal Reserve Bank in payment of debts and obligations of said Twin Falls National Bank."

And as regards another of the checks, it is stipulated: "That on or about the 21st day of September, 1929, the Twin Falls National Bank cleared said $267.78 check, together with other checks and items with the Twin Falls Bank and Trust Company and said Twin Falls National Bank, in settlement of the difference or balance of the clearings, drew a draft on the Continental National Bank and Trust Company of Salt Lake City, Utah, for the sum of $1311.98, payable to the Twin Falls Bank and Trust Company, and delivered said draft to said Twin Falls Bank and Trust Company, which said draft was thereafter and in due course collected by said Twin Falls Bank and Trust Company."

Similar statements appear in the stipulation with regard to the other checks involved. In other words, there is nothing in the record to indicate that the funds of the Twin Falls National Bank were augmented by the proceeds of the checks in question. On the contrary, the stipulation of facts discloses that the proceeds of the checks never came into the possession of the bank or its receiver, but were credited against its indebtedness at the Federal Reserve Bank, or in settlement of claims of drawee banks.

Accordingly, the rule announced in Schumacher v. Harriett, supra, and Schilling v. Rowe, supra, and the cases therein cited, is equally applicable here; and appellees are

not entitled to a preference over the general creditors of the bank.

Reversed.