**McKAY et al. v. ATWOOD.**

No. 2855.

District Court, W. D. Pennsylvania.

March 3, 1934.

Patterson, Crawford, Arensberg & Dunn, of Pittsburgh, Pa., for plaintiff.

Mortimer B. Lesher, of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

In this case the trustees of the McKay estate are seeking to impress with a trust a bank account balance in the sum of $11,-120.33 carried on the books of the Duquesne National Bank of Pittsburgh on the date a receiver was appointed, in a checking account under the name of "Estate of James McKay, Liquidating Trustees."

The case was heard on bill, answer, and an agreed statement of facts.

Briefly stated, the statement of agreed facts discloses that on February 2, 1932, the plaintiffs, as trustees of the estate of James McKay, turned over to the Duquesne National Bank certain cash and securities belonging to this estate under the terms of an agreement dated January 27, 1931, between the heirs of said James McKay, deceased, whereby it was agreed, among other things:

"2 (b) To immediately place all stocks, bonds, mortgages and other securities belonging to the estate of James McKay in the care and custody of the Duquesne National Bank of Pittsburgh there to remain until the conversion into cash or other distribution thereof amongst the heirs entitled to such distribution under the will of aforesaid James McKay, and the aforesaid trustees or a majority of them in writing shall authorize and direct the Duquesne National Bank from time to time as rapidly as possible without unnecessary sacrificing any of the securities to convert the stocks, bonds and mortgages into cash; the sale or conversion of any stocks or bonds and the collection of all mortgages and income on stocks, bonds and mortgages shall be made by the Duquesne National Bank and the proceeds of all such sale or sales, income and collections as made, shall be distributed and paid by the Duquesne National Bank to the persons entitled thereto and in the proportions as fixed by the will of James McKay. There shall be reserved, however, out of said converted funds and income in the hands of the Duquesne National Bank sufficient of the income, and principal if

necessary, to properly protect the unconverted real estate belonging to the estate of James McKay as to taxes, insurance, municipal assessments and the making of such repairs to the real estate as may be absolutely necessary, and the taxes, insurance and municipal assessments on the real estate shall be paid first out of income realized from the real estate, and if that be not sufficient then out of the personal estate. * * *

"It is understood that the Duquesne National Bank is a holding agent for the securities placed in its care by the Trustees, and also a disbursing agent for the funds realized from the sale of securities so placed in its care and income received by it from securities and including income from the collection of rents and proceeds of sales of real estate paid to it for purposes of disbursement and no liability attaches to the Bank beyond fidelity in the care of the securities and the disbursement of the funds."

On the date of the turnover of cash and securities by the trustees of the McKay estate to the bank, the trustee and the bank executed a receipt agreement dated February 2, 1932, whereby the bank acknowledged receipt of the cash and securities belonging to this estate. This receipt contained, among other provisions, the following:

"In receiving the money and securities aforesaid the Duquesne National Bank hereby agrees to keep the securities so placed in its hand properly earmarked and kept in a Safe Deposit Box separate from all other securities of the Bank and keep a separate account of such securities and the money of the James McKay heirs in a book or books separate and apart from the regular bank books and comply with the terms of agreement marked Exhibit 'B'.

"This shall, however, not be construed to mean that the moneys received by the Bank at the present time as well as from any and all other sources from rents, income from securities, sale of securities or sale of real estate shall not be carried in a proper account in the Duquesne National Bank until the same is distributed as provided in Exhibit "B" and the said Robert J. McKay, J. Albert McKay and Thomas J. McKay or their successors shall furnish to the Duquesne National Bank a full and correct list of the persons entitled to a distribution and the respective interests of each prior to each distribution."

At the time of the execution of this agreement, there was turned over to the bank by the trustees of the McKay estate $2,894.50, which was credited by the bank in a deposit account carried in the name of "Estate of James McKay, Liquidating Trustees." From time to time thereafter, additional deposits were made by the bank to this account of receipts from interest, dividends, and rents belonging to this estate; and from time to time disbursements were made by checks drawn by an officer of the bank on this account, with the result that at the time the bank closed and a receiver took charge there was a credit balance in this account of $11,120.33.

Since the receivership, the securities on hand have been turned back to the McKay estate; and the plaintiffs are now asking the payment to them of said $11,120.33, because of its being a special deposit and a preferred claim.

This we cannot agree to. As we view the situation, the position of the bank is not that of a trustee so far as this particular bank account is concerned. As to that, the bank and the McKay estate occupy the relative positions of debtor and creditor; the McKay estate being in no different position than any other depositor of the bank. True, the agreement of the heirs and trustees of this estate defines the position of the bank as "a holding agent for the securities placed in its care by the Trustees, and also a disbursing agent for the funds realized from the sale of securities so placed in its care and income received by it from securities and including income from the collection of rents and proceeds of sales of real estate paid to it for purpose of disbursement." But the receipt agreement also provides that requirement as to keeping a separate account of the securities and moneys of this estate shall not be construed to prevent the bank from carrying moneys received in behalf of this estate "in a proper account in the Duquesne National Bank until the same is distributed." We understand this to mean that the moneys of this estate received by the bank may be carried in an ordinary bank account until disbursed by the bank as distributing agent, as authorized by the agreement of the parties. No other conclusion would give effect to the agreement as to carrying the moneys received in a proper account. To have impressed this bank balance with a trust, not only must the agreement have been to keep a separate account of moneys received, but also to keep the money separate and apart from the other funds of the bank as a spe-

cial deposit, instead of carrying it in "a proper account" in the bank.

To us it is clear that the parties agreed that the moneys received for this estate should pass into the general funds of the bank, and should be used by it as general funds; that, when the day for distributing the same came around, the payment should be made from such general funds. This deposit to the McKay estate, liquidating trustees, was, to our mind, the ordinary deposit peculiar to banking business, which the bank may use, subject to an agreement to pay on demand. The agreement itself negatives any idea that deposit of this money in the Duquesne National Bank was to be a special deposit in which the bank would become the bailee of the depositor, in view of its provision that the keeping of separate accounts of the moneys received from this estate should not hinder the same being carried in a proper account in the bank.

In holding that the relationship of debtor and creditor was created in regard to the funds that reached the account in the bank, we rely on the reasoning of the Supreme Court in Commercial Nat. Bank of Pennsylvania v. Armstrong, 148 U. S. 50, 58, 13 S. Ct. 533, 37 L. Ed. 363.

We therefore conclude that the plaintiff's bill should be dismissed. An order may be submitted accordingly.