CITIZENS NAT. BANK OF HENDERSON-VILLE, N. C., et al. v. FIDELITY & CAS-UALTY CO. OF NEW YORK.*

No. 4058.

Circuit Court of Appeals, Fourth Circuit.

Oct. 6, 1936.

NORTHCOTT, Circuit Judge, dissenting.

G. H. Valentine, of Hendersonville, N. C. (George P. Barse and John F. Anderson, both of Washington, D. C., on the brief), for appellants.

Thomas L. Johnson, of Asheville, N. C. (T. A. Uzzell, Jr., and Johnson, Rollins & Uzzell, all of Asheville, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by the receiver of the failed Citizens National Bank of Hendersonville, N. C., from a decree allowing priority status to a claim based upon a collection item handled by the bank. The complainant in the court below was the Fidelity & Casualty Company of New York, which had succeeded to the rights of the Inter-Southern Life Insurance Company with respect to a certificate of deposit, the payment of which the Fidelity & Casualty

Company had guaranteed and which had been sent to the failed bank for collection. That bank had used the certificate in a clearance transaction with the bank which had issued it, receiving as a result of the clearance a draft which was eventually paid in full. The court below, being of opinion that a trust relationship existed, held that complainant was entitled to payment in full; and the receiver has appealed, contending that complainant is a mere general creditor. The facts in detail, in so far as they are pertinent to the question before us, are as follows:

Shortly prior to November 15, 1930, the Citizens National Bank of Hendersonville received for collection from the Inter-Southern Life Insurance Company a certificate of deposit in the sum of $10,-000, which had been issued by the First Bank & Trust Company of that city. On November 15th, the date of the maturity of the certificate, collection was effected in a routine clearing transaction between the two banks, in which this certificate and other items aggregating $41,356.97 were presented for payment to the First Bank & Trust Company, and items aggregating $5,-049.54 were presented by that bank to the Citizens National Bank. The amount of the claims held by the First Bank & Trust Company was offset against the amount of those held by the Citizens National; and a draft for the difference of $36,307.38, drawn on the Central Bank & Trust Company of Asheville, was given by the First Bank & Trust Company and accepted by the Citizens National. The certificate of deposit held for collection was marked paid and surrendered to the First Bank & Trust Company at that time.

The draft received by the Citizens National on the clearance with the First Bank & Trust Company was duly presented to the Central Bank & Trust Company for payment on November 18, 1930, but payment was refused for lack of funds to the credit of the drawer; whereupon the draft was protested and returned to the Citizens National. Both the First Bank & Trust Company and the Central Bank & Trust Company, drawer and drawee of the draft, respectively, closed their doors next day, November 19th, and receivers were appointed for them. The Citizens National closed its doors November 20th; and the receiver of that bank, after crediting on the draft certain items which it owed to the First Bank & Trust Company, filed claim for the balance of $32,485.72 with the receiver of the First Bank & Trust Company, which was paid in full as a preferred claim under the law of North Carolina. Code N.C.1931, § 218(c) (14). This was the only claim filed by the receiver of the Citizens National against the receiver of the First Bank & Trust Company, no claim being filed with respect to the $10,000 certificate of deposit, as that item was not held as a claim but had been surrendered at the time of the clearance and the acceptance of the draft. As a result of a settlement with respect to certain other of the items embraced in the clearance, the amount collected by the receiver of the Citizens National on the draft is sufficient to pay in full the claim here in question and all remaining items involved in the clearance.

It appears that, when the Citizens National received notice that the draft had been dishonored, it stopped payment on its own draft which it had sent to the insurance company in payment of the amount collected on the deposit. It did nothing, however, towards repudiating the exchange of items made in the clearance transaction with the First Bank & Trust Company. On the contrary, both it and its receiver treated the draft as its property and filed claim accordingly demanding payment of the draft in full under Code 1931, § 218(c) (14), as a cashier's check entitled to priority as such. Neither the insurance company nor the Fidelity & Casualty Company, which succeeded to the rights of the insurance company with respect to the certificate, has attempted to repudiate the collection made by the Citizens National in the clearance transaction or has made any claim against the First Bank & Trust Company with respect to the certificate of deposit. The receiver of the Citizens National at first recognized the claim of the Fidelity & Casualty Company as entitled to preferential payment out of the funds collected on the draft from the receiver of the First Bank & Trust Company; but, after the decision of the Supreme Court in Jennings v. United States Fidelity & Guaranty Co., 294 U.S. 216, 55 S.Ct. 394, 79 L. Ed. 869, 99 A.L.R. 1248, he changed his position, and denied that the claim was other than a general claim against the bank.

It is admitted that the Citizens National was insolvent on November 15th, at the time of the collection and clearance in question; but we think that this fact is immaterial in view of the further admission that

its officers and directors did not have knowledge of the insolvency, but believed it to be solvent. See Ill. Cent. R. Co. v. Rawlings (C.C.A.5th) 66 F.(2d) 146, 150, and cases there cited.

[2] It is but fair to the learned District Judge to say that his decree is in accord with our decision in Ellerbe v. Studebaker Corporation of America (C.C.A.4th) 21 F.(2d) 993, 994. In that case, in accordance with what we understood to be the rule recognized in the federal courts, we held that, in the absence of some proof of a contrary intention, a collecting bank held the proceeds of a collection in trust, and that, in case of its failure, the owner of the draft or other instrument thus collected was entitled to the proceeds of collection if he could trace them into funds in the hands of its receiver. There can be no question but that the proceeds of collection have been traced in this case; and we would affirm the decree appealed from were it not for the decision of the Supreme Court to which we have adverted, Jennings v. United States Fidelity & Guaranty Co., 294 U.S. 216, 55 S.Ct. 394, 395, 79 L.Ed. 869, 99 A.L.R. 1248. In that case the rule is laid down that, upon collection, the agency relation ceases, in the absence of agreement to the contrary, and the position of the bank from then on is that of a mere debtor. The Court says:

"In the absence of tokens of a contrary intention, the better doctrine is, where the common law prevails, that the agency of the collecting bank is brought to an end by the collection of the paper, the bank from then on being in the position of a debtor, with liberty, like debtors generally, to use the proceeds as its own. Commercial Bank of Pennsylvania v. Armstrong, 148 U.S. 50, 13 S.Ct. 533, 37 L.Ed. 363; Marine Bank v. Fulton County Bank, 2 Wall. 252, 17 L.Ed. 785; Planters' Bank v. Union Bank, 16 Wall. 483, 501, 21 L.Ed. 473; Hecker-Jones-Jewell Milling Co. v. Cosmopolitan Trust Co., 242 Mass. 181, 185, 186, 136 N.E. 333, 24 A.L.R. 1148; Freeman's National Bank v. National Tube-Works Co., 151 Mass. 413, 418, 24 N.E. 779, 8 L. R.A. 42, 21 Am.St.Rep. 461; Manufacturers' National Bank v. Continental Bank, 148 Mass. 553, 558, 20 N.E. 193, 2 L.R.A. 699, 12 Am.St.Rep. 598; First National Bank of Richmond v. Wilmington & W. R. Co. (C.C.A.) 77 F. 401, 402; Philadelphia National Bank v. Dowd (C.C.) 38 F. 172, 183, 2 L.R.A. 480; Merchants' &

Farmers' Bank v. Austin (C.C.) 48 F. 25, 32. 'One who collects commercial paper through the agency of banks must be held to impliedly contract that the business may be done according to their well-known usages, so far as to permit the money collected to be mingled with the funds of the collecting bank.' "

And we think that it makes no difference in this case that, instead of collecting cash on the certificate of deposit, the collecting bank used it in a clearance and received a draft for the balance due upon the clearance, which was ultimately collected in cash. If a bank accepts anything other than cash in payment of a negotiable instrument which it holds for collection, it becomes, under the rules of the common law, liable as a debtor for the amount of the instrument, the reason for the rule being that, as the instrument is payable only in cash, the collecting bank by accepting something other than cash assumes the risk incident to such method of collection and is estopped to deny payment. Cleve v. Craven Chemical Co. (C.C.A.4th) 18 F.(2d) 711, 713, 52 A.L.R. 980; Federal Reserve Bank v. Malloy, 264 U.S. 160, 44 S.Ct. 296, 68 L.Ed. 617, 31 A.L.R. 1261. If it obtains cash, it becomes liable merely as a debtor, under the rule as laid down in the Jennings Case. Upon making collection, therefore, it becomes liable as a debtor, in whatever form the collection be made; and we see no reason for making a distinction between a collection in cash and a collection in the form of a draft which is eventually collected in cash and for holding in the latter case that the trust relationship continues until the draft is collected.

Under the doctrine of the Jennings Case, the agency to collect is coupled with an authority in the collecting bank to use the proceeds of collection for its own purposes; and where the collecting bank, in accordance with the usual custom of the banking business, makes a collection in what it chooses to accept as money's worth and thereupon becomes in law liable as a debtor for the amount of the collection, there is no reason to hold that the trust relationship is extended beyond such collection. To say that, if the collecting bank accepts money in payment, the money is its own, but that, if for purposes of convenience and in accordance with banking usage it accepts a draft, it holds the draft in trust, is to draw a distinction which is without

practical value and finds no support in sound legal theory. If the collecting bank may use the proceeds of collection for its own purposes, what sense can there be in holding that the trust relationship of collecting agent is continued merely because, for its own purposes, it accepts a draft in payment instead of the cash in which the instrument is payable? If there is no trust relationship where it accepts cash and uses the cash in purchasing a draft, why hold that there is such relationship where it accepts a draft in payment in lieu of cash?

■ In the case of a draft received for the balance due upon a clearance, which is the case before us, there is an additional reason for holding that under the rule of the Jennings Case no trust attaches to the proceeds of the draft. Under that rule the owner of the collection item impliedly consents that the collecting bank mingle the proceeds of collection with its general assets, making itself a debtor for the amount of the collection. When the item is used in a clearance, the mingling takes place contemporaneously with the collection; and the draft for the balance due upon the clearance is not accepted in payment of particular items but as one of the general assets of the collecting bank resulting from the clearance. If upon collection the collecting bank becomes a mere debtor with right to use for its own purposes the proceeds of collection and intermingle them with its other assets, it can make no difference in the rights of the parties that the intermingling occurs contemporaneously with the collection. Any other rule would not only be out of harmony with banking practice but would be impossible of just and reasonable application. To declare a trust with respect to a draft received for the balance due upon a clearance, in favor of all the negotiable instruments used in the clearance, would not only lead to great difficulties in adjusting the rights of the owners of such instruments, but would lead to discrimination between the owners of instruments used in a clearance where there has been a favorable balance and the owners of instruments used in a clearance where the balance has been unfavorable.

·The courts can administer without difficulty the rule which we laid down in the Ellerbe Case, supra, i. e., that the trust relationship continues until settlement is made with the owner of the paper, provided the proceeds of the collection can be traced. They can also administer without difficul-ty the rule that, where the bank makes collection in accordance with banking custom and usage, its agency ceases and it becomes a mere debtor for the proceeds. But nothing but confusion can come of an attempt to apply both rules and hold that, while the trust relationship ends upon collection because of banking usage and the implied agreement that the collecting bank may use the proceeds of collection and mingle them with its general assets, nevertheless, if in making collection it accepts a draft instead of cash, the trust relationship continues with respect to the draft, even though it represents a mere balance upon a clearance and the paper of perhaps a hundred persons has gone into the clearance.

■ Appellee relies upon the North Carolina par clearance statute, C.S.Supp.N.C. 1924, § 220(aa); but that statute applies only to checks presented for payment by or through Federal Reserve Banks, etc., and was intended to prevent the Federal Reserve Banks from enforcing their par clearance policy by presenting checks for payment over the counter and requiring payment in cash in contravention of established banking practice. F. & M. Bank v. Federal Reserve Bank, 262 U.S. 649, 43 S.Ct. 651, 67 L.Ed. 1157, 30 A.L.R. 635. It has no application to certificates of deposit. In addition to this, the act has been held not to modify the rule of the Malloy Case. Morris v. Cleve, 197 N.C. 253, 148 S.E. 253.

[6] Likewise, we think it makes no difference that the Citizens National stopped payment of the draft which it sent to the insurance company when the draft which it received upon the clearance was dishonored. This of itself does not show any agreement that the collection was to be handled other than as an ordinary collection item; and, as shown above, whatever view of the law be taken, the Citizens National was liable as a debtor for the amount collected on the certificate, and the failure to collect the draft received by it in clearance did not warrant it in stopping payment on the draft which it had given. Whether a trust relationship existed after the clearance transaction, with respect to the proceeds of that transaction must be determined by the relationship which the collecting bank sustained towards the items entering into the clearance, not by views which it may have entertained subsequently as to its liability. If its duty were not only to collect the certificate but

also to segregate the proceeds of collection and transmit them to the forwarder of the certificate, then a trust ex maleficio might have been declared on the proceeds of a clearance transaction in which the certificate was used. But, if the certificate, as was clearly the case, was forwarded for collection and remittance in accordance with usual banking practice, the collecting bank had the right to mingle the proceeds with its general assets upon collection; and, when it so mingled them in a clearance transaction at the time of collection, its liability as debtor arose immediately, and no subsequent denial of liability could affect that liability or give rise to a trust.

For the reasons stated, the decree appealed from will be reversed.

Reversed.

NORTHCOTT, Circuit Judge (dissenting).

I cannot concur in the above opinion. When the receiver of the Citizens National Bank took charge of its affairs, he found the $10,000 item in controversy held as a claim against First Bank & Trust Company. The collection of the item had not been completed at the time. The claim against First Bank & Trust Company, asserted as preferred by the receiver for the amount that was afterward allowed, included this $10,000 item. The Citizens National Bank had stopped payment on the remittance check which had been sent, when it was presumed that the collection had been made. The preferred claim of the receiver of Citizens National Bank was in dispute, and there was litigation involving the allowance of the preference. The collection had not been completed by the Citizens National Bank, but was completed at the end of litigation, by the receiver of that institution.

Under the North Carolina statute (Consolidated Statutes Supplement 1924, § 220 (aa), as construed by the Supreme Court of North Carolina in Braswell, Inc. v. Bank, 197 N.C. 229, 148 S.E. 236, the relation between the forwarding bank and the collecting bank was that of principal and agent, not that of creditor and debtor. The discussion of this question in Jennings v. United States Fidelity & Guaranty Company, 294 U.S. 216, 55 S.Ct. 394, 395, 79 L.Ed. 869, 99 A.L.R. 1248, seems to me to hold to this effect definitely. In referring to the Indiana Code, which in my opinion has the same effect as the North Carolina Code, Mr. Justice Cardozo says: "Under that Code (§ 2), the relation between the forwarding bank and the collecting bank is that of principal and agent until the agent has completed the business of collection. Whether a fiduciary relation continues even afterwards, upon the theory that the proceeds of the collection until remitted to the forwarder are subject to a trust, depends upon the circumstances."

I am of the opinion that under the decision of the Supreme Court in the Jennings Case the fact that the North Carolina statute refers to checks, and not certificates of deposit, does not change the effect of the statute as to the relationship between the forwarding and the collecting bank.

The collecting bank had failed to complete the business of collection, and the testimony shows that the entry was carried as an uncollected item by Citizens National Bank. The business of collection was completed, as far as the item in dispute is concerned, by the receiver, after he took charge of Citizens National Bank, and, in completing the collection, the receiver acted as agent for the forwarding bank. I cannot agree with the statement in the opinion of the court that no claim was filed by the receiver of the Citizens National Bank against the receiver of the First Bank & Trust Company with respect to the $10,000 certificate of deposit. It is admitted, and cannot be disputed, that the claim filed by the receiver of the Citizens National Bank for $32,485.72 was for a balance growing out of a settlement between the two banks, in which settlement the $10,000 item was included. The receiver of the Citizens National filed a claim for this very balance and it was allowed and paid as preferred. How can it be said that no claim was filed with respect to the $10,000 certificate of deposit?

It seems to me that it is highly unjust and inequitable to allow the fund belonging to the appellee's assignor, collected by the receiver of a closed bank, to be used for the benefit of creditors who had trusted the credit of the closed bank. The forwarding bank had only trusted the closed bank for the purpose of making the collection and remitting the proceeds.

Under the decision of the Supreme Court in the Jennings Case, supra, as I construe it, the finding of the court below was right and the judgment should be affirmed.